1  Lionel Z. Glancy (#134180)
2  Michael Goldberg (#188669)
   Robert V. Prongay (#270796)
3  **GLANCY BINKOW & GOLDBERG LLP**
   1925 Century Park East, Suite 2100
4  Los Angeles, CA  90067
5  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
6  Email:  info@glancylaw.com



FILED
CLERK, U.S. DISTRICT COURT

NOV 14 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

7
8  Attorneys for Plaintiff
   [Additional Counsel on Signature Page]
9

10              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11

12  FELIX SANTORE, Individually and on      )   Case No.: CV13-08440-PA (SH)
    Behalf of All Other Persons Similarly   )
13  Situated,                               )
                                            )
14                                          )
                       Plaintiff,           )   **CLASS ACTION COMPLAINT**
15                                          )
                                            )
16              v.                          )   **JURY TRIAL DEMANDED**
                                            )
17                                          )
    IXIA, VICTOR ALSTON, ATUL              )
18  BHATNAGAR, THOMAS B. MILLER,            )
19  and ERROL GINSBERG,                     )
                                            )
20                     Defendants.          )
                                            )
21                                          )
                                            )
22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff   Felix Santore ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ixia ("Ixia" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Ixia securities between April 29, 2010 and October 24, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.     Ixia delivers information technology solutions to a wide variety of organizations, through real-time monitoring, real-world testing, and rapid assessment of

CLASS ACTION COMPLAINT

1

networks and systems. The Company's tools are purportedly used to provide "end-to-end visibility" and complete understanding into user behavior, security vulnerabilities, network capacity, application performance, and IT resiliency.

3. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly recognized revenues related to its warranty and software maintenance contracts; (2) The Company's Chief Executive Officer "CEO" misstated his academic credentials and employment history; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

4. On March 19, 2013, Ixia announced that it had filed a Form 12b-25 with the SEC relating to the Company's Annual Report on Form 10-K for the year ended December 31, 2012, and that the Company needed to delay the filing of its Annual Report, "to correct an error related to the manner in which [Ixia] recognizes revenues for its warranty and software maintenance contracts."

5. On April 3, 2013, Ixia announced that after a further evaluation of the Company's finances, and identifying an additional error in the Company's revenue recognition practices that required correction, the Company's management recommended to the audit committee of the Company that the Company restate

previously issued financial statements for the fiscal years ended December 31, 2011 and 2010, and the fiscal quarters ended March 31, 2011, June 30, 2011, September 30, 2011, March 31, 2012, June 30, 2012, and September 30, 2012 (the, "Restated Periods"); and, that the financial statements from the Restated Periods should no longer be relied upon.

6.     On this news, the Company's shares declined $1.94 per share, or over 9.5%, to close on April 4, 2013, at $18.37 per share.

7.     On April 4, 2013, Ixia filed its Annual Report on Form 10-K with the SEC, and issued a press release on April 8, 2013 stating in relevant part:

> As part of the 2012 Form 10-K, Ixia has completed the restatement of its previously issued consolidated financial statements for the years ended December 31, 2010 and 2011, its unaudited quarterly financial information for each of the quarters and year-to-date periods in the year ended December 31, 2011 and in the nine months ended September 30, 2012, and its selected financial data for the years ended December 31, 2008 and 2009. . . The restated consolidated financial statements correct certain errors that existed in Ixia's previously issued consolidated financial statements, principally related to the manner in which the Company recognized revenues related to its warranty and software maintenance contracts, including a previous implied warranty and software maintenance arrangement with one of the Company's customers.

8.     On October 24, 2013, the Company disclosed "Vic Alston has resigned as its President and CEO and as a member of its board of directors following a determination by the Ixia audit committee that although he had attended Stanford University, he had misstated his academic credentials, incorrectly claiming to have received a B.S. and a M.S. in Computer Science, and had misstated his age and early

employment history."

9.      On this news, the Company's shares declined $0.78 per share, or nearly 5%, to close on October 25, 2013, at $14.94 per share.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

13.      Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as Ixia's headquarters are located in this district, and the acts, conduct and other wrongs alleged in this Complaint occurred in this District.

14.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.   Plaintiff Felix Santore, as set forth in the attached certification, purchased Ixia shares at artificially inflated prices during the Class Period and has been damaged thereby.

16.   Defendant Ixia was incorporated in California in 1997, and is headquartered in Calabasas, California.

17.   Defendant Victor Alston ("Alston") formerly served as the Company's President and CEO, assuming that role in May 2012 until his resignation on October 24, 2013. Prior to May 2012, Alston served as the Company's COO as well as Senior Vice President of Product Development.

18.   Defendant Atul Bhatnagar ("Bhatnagar") served as President and CEO of Ixia from March 2008 until May 2012.

19.   Defendant Thomas B. Miller ("Miller") currently serves as Ixia's CFO, and has served the Company in this role since March 2000.

20.   Defendant Errol Ginsberg ("Ginsberg") currently serves as Ixia's Chairman and Chief Innovation Officer, Ginsberg has held this position since March 2008.

21.   The defendants referenced above in ¶¶ 17- 20 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.   Ixia delivers information technology solutions to a wide variety of

organizations, through real-time monitoring, real-world testing, and rapid assessment of networks and systems. The Company's tools are used to provide "end-to-end visibility" and complete understanding into user behavior, security vulnerabilities, network capacity, application performance, and IT resiliency.

**Materially False and Misleading**
**Statements Issued During the Class Period**

23.   On April 29, 2010, the Company issued a press release disclosing its financial results for the third quarter of 2010, and announced in the headline, "Ixia Announces Record Revenue of $70.9 million for the Third Quarter 2010."   The Company reported that total revenue for the 2010 third quarter was a record $70.9 million, an increase of 53 percent over the $46.4 million reported for the 2009 third quarter and an increase of 7 percent over the $66.1 million reported in the immediately preceding quarter.

24.   On February 3, 2011, the Company issued a press release disclosing its financial results for the fourth quarter and year ended December 31, 2010. In its press release announcing financial results, the Company included the headline, "Ixia Announces Record Revenue for Fourth Quarter and Fiscal Year 2010," and reported that total revenue for the 2010 third quarter was a record $70.9 million, an increase of 53 percent over the $46.4 million reported for the 2009 third quarter and an increase of 7 percent over the $66.1 million reported in the immediately preceding quarter. The Company also reported net income for the 2010 third quarter of $4.9 million, or $0.07

per diluted share, compared with a net loss of $6.2 million, or $0.10 per share, for the 2009 third quarter.

25.     On April 21, 2011, the Company issued a press release disclosing its financial results for the quarter ended March 31, 2011, announcing in the headline, "26 Percent Year-Over-Year Revenue Growth". The Company reported that total revenue for the 2011 first quarter grew to a record $78.5 million, an increase of 26 percent compared with $62.0 million reported for the 2010 first quarter and up $0.7 million compared with $77.8 million reported in the immediately preceding quarter. Ixia further reported net income for the 2011 first quarter of $7.1 million, or $0.10 per diluted share, compared with net income of $0.9 million, or $0.01 per diluted share, for the 2010 first quarter.

26.     On July 21, 2011, the Company reported its financial results for the second quarter ended June 30, 2011. The Company announced that total revenue for the 2011 second quarter was $69.0 million, compared with $66.1 million reported for the 2010 second quarter and $78.5 million reported for the first quarter of 2011, and net income for the 2011 second quarter of $0.5 million, or $0.01 per diluted share, compared with a net loss of $0.4 million, or $0.01 per share, for the 2010 second quarter.

27.     On October 20, 2011, the Company reported its financial results for the third quarter ended September 30, 2011.  The Company announced that total revenue for the 2011 third quarter was $77.3 million, compared with $70.9 million reported for the 2010 third quarter and $69.0 million reported for the 2011 second quarter, and net income for the 2011 third quarter of $6.4 million, or $0.09 per diluted share, compared

with net income of $4.9 million, or $0.07 per diluted share, for the 2010 third quarter.

28.     On February 2, 2012, the Company reported its financial results for the fourth quarter and year ended December 31, 2011. Ixia announced that total revenue for the 2011 fourth quarter was a record $83.7 million, compared with $77.8 million reported for the 2010 fourth quarter and $77.3 million reported for the 2011 third quarter. The Company further reported that total revenue for the fiscal year 2011 was $308.4 million, an increase of 11 percent compared with $276.8 million reported for fiscal year 2010, and also reported net income for the 2011 fourth quarter of $8.9 million, or $0.12 per diluted share, compared with net income of $5.8 million, or $0.08 per diluted share, for the 2010 fourth quarter.

29.     Commenting on the Company's performance in Ixia's press release announcing fourth quarter and year ended December 31, 2011 results, then-CEO Bhatnagar stated, "[r]ecord revenue and bookings led a strong fourth quarter and finish to 2011."

30.     On April 19, 2012, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2012.  The Company announced that total revenue for the 2012 first quarter was $85.6 million, compared with $78.5 million reported for the 2011 first quarter and $83.7 million reported for the 2011 fourth quarter, and net income for the 2012 first quarter of $4.4 million, or $0.06 per diluted share, compared with net income of $7.1 million, or $0.10 per diluted share, for the 2011

1   first quarter.

2

3       31.    On July 26, 2012, the Company issued a press release disclosing its

4   financial results for the second quarter ended June 30, 2012, announcing in the headline,

5   "[Ixia] Achieves Record Revenue of 92.3 Million." The Company announced that total

6   revenue for the 2012 second quarter was $92.3 million, compared with $69.0 million

7

8   reported for the 2011 second quarter and $85.6 million reported for the 2012 first

9   quarter, and net income for the 2012 second quarter of $26.9 million, or $0.33 per

10

11  diluted share, compared with net income of $0.5 million, or $0.01 per diluted share, for

12  the 2011 second quarter.

13

14      32.    On October 24, 2012, the Company issued a press release announcing its

15  financial results for the third quarter ended September 30, 2012.   The Company

16

17  announced that total revenue for the 2012 third quarter was $109.6 million, compared

18  with $77.3 million reported for the 2011 third quarter and $92.3 million reported for the

19

20  2012 second quarter, and net income for the 2012 third quarter of $11.4 million, or $0.15

21  per diluted share, compared with net income of $6.4 million, or $0.09 per diluted share,

22

23  for the 2011 third quarter.

24      33.    On February 6, 2013, the Company issued a press release reporting its

25  financial results for the fourth quarter and year ended December 31, 2012. The Company

26

27  announced that total revenue for the 2012 fourth quarter was a *record* $124.1 million,

28  compared with $83.7 million reported for the 2011 fourth quarter and $109.6 million

reported for the 2012 third quarter, and net income for the 2012 fourth quarter of $4.6 million, or $0.06 per diluted share, compared with net income of $9.8 million, or $0.14 per diluted share, for the 2011 fourth quarter.

34.     The statements referenced in ¶¶ 23 - 33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including   that: (1) the Company improperly recognized revenues related to its warranty and software maintenance contracts; (2) The Company's Chief  Executive Officer "CEO" misstated his academic credentials and employment  history; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

35.     On March 19, 2013, the truth began to emerge that Ixia's revenues were not as grand and record breaking as the Company repeatedly emphasized in its disclosures to investors. Ixia announced that it had filed a Form 12b-25 with the SEC relating to the Company's Annual Report on Form 10-K for the year ended December 31, 2012, and that the Company needed to delay the filing of its Annual Report, "to correct an error related to the manner in which [Ixia] recognizes revenues for its warranty and software maintenance contracts."

36.     Then on April 3, 2013, Ixia announced that after a further evaluation of the Company's finances, and identifying an additional error in the Company's revenue

recognition practices that required correction, the Company's management recommended to the audit committee of the Company that the Company restate previously issued financial statements for the fiscal years ended December 31, 2011 and 2010, and the fiscal quarters ended March 31, 2011, June 30, 2011, September 30, 2011, March 31, 2012, June 30, 2012, and September 30, 2012 (the, "Restated Periods"); and, that the financial statements from the Restated Periods should no longer be relied upon.

37.    On this news, the Company's shares declined $1.94 per share, or over 9.5%, to close on April 4, 2013, at $18.37 per share.

38.    On April 8, 2013, the Company issued a press release announcing the filing of its restated financial statements.  The press release stated the following in relevant part:

> As part of the 2012 Form 10-K, Ixia has completed the restatement of its previously issued consolidated financial statements for the years ended December 31, 2010 and 2011, its unaudited quarterly financial information for each of the quarters and year-to-date periods in the year ended December 31, 2011 and in the nine months ended September 30, 2012, and its selected financial data for the years ended December 31, 2008 and 2009. With the filing of its 2012 Form 10-K, Ixia is now current in its filings of periodic reports with the Commission.
>
> The restated consolidated financial statements correct certain errors that existed in Ixia's previously issued consolidated financial statements, principally related to the manner in which the Company recognized revenues related to its warranty and software maintenance contracts, including a previous implied warranty and software maintenance arrangement with one of the Company's customers. The related changes in the Company's revenue recognition practices will generally result

in a shift of revenues between accounting periods in our previously issued financial statements. The changes will not have any impact on the total revenues recognized over the life of a warranty and software maintenance contract or arrangement, although the timing of the recognition of such revenues will generally commence earlier and end earlier than was reflected in our previously issued financial statements for the restated periods. While the Company has made certain restatement adjustments that affect revenues, operating results, and deferred revenues for each of the restated periods, the restatement adjustments do not affect the total revenues ultimately earned or to be earned, or the amount or timing of cash received or to be received, from individual sales transactions. Accordingly, the restatement adjustments do not affect the Company's liquidity or overall cash flow for any prior period.

39.   On April 30, 2013, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2013.  The Company announced that total revenue for the 2013 first quarter was $122.76 million, compared with $86.73 million reported for the 2012 first quarter, and net income for the 2013 first quarter of $8.1 million, or $0.11 per diluted share, compared with net income of $5.2 million, or $0.07 per diluted share, for the 2012 first quarter.

40.   On July 8, 2013, the Company issued a press release announcing certain preliminary financial results for the second quarter ended June 30, 2013.  The press release stated the following in relevant part:

Total revenue for the second quarter of 2013 is expected to be in the range of $114 million to $116 million, below the company's previous guidance of $119 million to $122 million. Revenue from Ixia's 2012 acquisitions, Anue Systems, Inc. ("Anue") and BreakingPoint Systems, Inc. ("BreakingPoint"), is

expected to be at the high end of the previously given range of $28 million to $32 million.

"We are disappointed with our topline performance this quarter, which was impacted by several factors, including lower than expected revenue from network equipment manufacturers and certain service providers as customers extended review cycles and certain large deals that were pushed into future quarters," said Vic Alston, president and CEO of Ixia.

"We did, however, see several positive trends in the quarter. Sales to our two largest customers, AT&T and Cisco, were strong and in line with expectations, and our overall book-to-bill ratio was in excess of one. Additionally, the performance of our 2012 acquisitions, Anue and BreakingPoint, was very encouraging and revenue is expected to register at the high end of our expectations for the second quarter. These indicators give us confidence that our competitive position remains strong although we remain cautious about the near-term spending environment," continued Alston.

41.     On this news, the Company's shares declined $3.44 per share, or over 19%, to close on July 9, 2013, at $14.30 per share.

42.     On July 30, 2013, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2013.  The Company announced that total revenue for the 2013 second quarter was $87.8 million, compared with $73.3 million reported for the 2012 second quarter, and net income for the 2013 second quarter of $3.7 million, or $0.05 per diluted share, compared with net income of $25.7 million, or $0.32 per diluted share, for the 2012 second quarter.

43.     On October 24, 2013, after the market closed, the Company disclosed that Defendant Alston "has resigned as its President and CEO and as a member of its board

of directors following a determination by the Ixia audit committee that although he had attended Stanford University, he had misstated his academic credentials, incorrectly claiming to have received a B.S. and a M.S. in Computer Science, and had misstated his age and early employment history."

44.    On this news, the Company's shares declined $0.78 per share, or nearly 5%, to close on October 25, 2013, at $14.94 per share.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ixia securities during the Class Period (the "Class"); and were damaged thereby.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

46.    The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Ixia shares were actively traded on the Nasdaq.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Ixia or its transfer agent and may be notified of the pendency of this action by mail, using the form of

notice similar to that customarily used in securities class actions.

47.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ixia;

- whether the Individual Defendants caused Ixia to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Ixia shares during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

51.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Ixia shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Nasdaq, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's shares; and

- Plaintiff and members of the Class purchased and/or sold Ixia shares between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of shares.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ixia shares; and (iii) cause Plaintiff and other members of the Class to purchase Ixia shares and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

56.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Ixia shares. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Ixia's finances and business prospects.

57.     By virtue of their positions at Ixia, the defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Ixia, the Individual Defendants had knowledge of the details of Ixia internal affairs.

59.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Ixia.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Ixia's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Ixia shares was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Ixia's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Ixia shares at artificially inflated prices and relied upon the price of the shares, the integrity of the market for the shares and/or upon statements disseminated by defendants, and were damaged thereby.

60.   During the Class Period, Ixia shares were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Ixia shares at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Ixia shares was

CLASS ACTION COMPLAINT

substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Ixia shares declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's shares during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

63.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.    During the Class Period, the Individual Defendants participated in the operation and management of Ixia, and conducted and participated, directly and indirectly, in the conduct of Ixia's business affairs.  Because of their senior positions, they knew the adverse non-public information about Ixia's misstatement of income and expenses and false financial statements.

65.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Ixia's financial condition and results of operations, and to correct promptly any public statements issued by Ixia which had become materially false or misleading.

66.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Ixia disseminated in the marketplace during the Class Period concerning Ixia's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Ixia to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Ixia within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ixia shares.

67.   Each of the Individual Defendants, therefore, acted as a controlling person of Ixia.  By reason of their senior management positions and/or being directors of Ixia, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Ixia to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Ixia and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.   By reason of the above conduct, the Individual Defendants are liable

CLASS ACTION COMPLAINT

21

pursuant to Section 20(a) of the Exchange Act for the violations committed by Ixia.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2013

**GLANCY BINKOW & GOLDBERG LLP**

By: _____

Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

CLASS ACTION COMPLAINT

22

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10017-5516
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Felix Santore_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Ixia ("Ixia" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Ixia securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Ixia securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Ixia securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____
                    **(Date)**



_____
**(Signature)**

_____
**(Type or Print Name)**

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 6/19/13 | Purchase | 300 | $16.92 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| FELIX SANTORE, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> *Plaintiff(s)* <br> v. <br> IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER,  and ERROL GINSBERG, <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. CV13-08440-PA (SH)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Defendants IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER,  and ERROL GINSBERG
Corporate Center
26601 W. Agoura Rd.
Calabasas, CA 91302

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Lionel Z. Glancy
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: NOV 1 4 2013 _____    _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| FELIX SANTORE, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) ) |
| *Plaintiff(s)* | ) ) ) |
| v. | ) ) |
| IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER,  and ERROL GINSBERG, | ) ) ) ) |
| *Defendant(s)* | ) ) |

Civil Action No.  **CV 13-08440** PA (SHx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Defendants IXIA, VICTOR ALSTON, ATUL BHATNAGAR,
THOMAS B. MILLER,  and ERROL GINSBERG
Corporate Center
26601 W. Agoura Rd.
Calabasas, CA 91302

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Lionel Z. Glancy
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

MARILYN DAVIS

Date:  NOV  1 4 2013

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                          *Server's signature*

                                                          _____
                                                          *Printed name and title*

                                                          _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| FELIX SANTORE, Individually and on Behalf of All Other Persons Similarly Situated | IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, and ERROL GINSBERG |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)<br><br>Lionel Z. Glancy (#134180), Glancy Binkow & Goldberg LLP<br>1925 Century Park East, Suite 2100, Los Angeles, CA 90067<br>Telephone: (310) 201-9150 | **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes  ☐ No       ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Private Securities Litigation Reform Act, 15 U.S.C. §§ 78j(b) & 78t(a); and 17 C.F.R. § 240.10b-5
Securities Fraud - Violation of Sections 10(b) and 20(a) of the Securities Exchange Act and Violation of SEC Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**    Case Number: _____ CV13-08440 _____

CV-71 (09/13)                        CIVIL COVER SHEET                        Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no, " go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**  Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN DIVISION |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____ DATE: November 14, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Percy Anderson_____ and the assigned Magistrate Judge is _____Stephen J. Hillman_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-8440-PA (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____November 14, 2013_____
Date

By _MDAVIS_____
Deputy Clerk

═══════════════════════════════════════

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☑ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**