**WESTERMAN LAW CORP.**
Jeff S. Westerman (SBN 94559)
Anna Faircloth (SBN 275636)
1900 Avenue of the Stars, 11th floor
Los Angeles, California 90067
Telephone: (310) 698-7450
Fax: (310) 201-9160
jwesterman@jswlegal.com
afaircloth@jswlegal.com

**GRANT & EISENHOFER P.A.**
James J. Sabella (admitted pro hac vice)
Diane Zilka (admitted pro hac vice)
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500
Fax: (646) 722-8501
jsabella@gelaw.com
dzilka@gelaw.com

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement Retirement System*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, and ERROL GINSBERG,<br><br>Defendants. | Case No. CV13-08440-MMM (SH)<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMNARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Margaret M. Morrow<br><br>Date:        February 22, 2016<br>Time:        10:00 a.m.<br>Courtroom:   780 |

## NOTICE OF MOTION AND UNOPPOSED MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 22, 2016, at 10:00 a.m., in Courtroom 780 of the United States District Court for the Central District of California, U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, the Honorable Margaret M. Morrow presiding, Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement of this action; (2) preliminarily certifying the proposed class for purposes of settlement; (3) approving the form and manner of giving notice of the proposed settlement to the class; and (4) scheduling a final approval hearing before the Court. The grounds for this motion are that the proposed settlement is within the range of what could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the class and a hearing for final approval of the proposed settlement scheduled.

This motion is based upon this Notice of Motion and Unopposed Motion, the Memorandum of Points and Authorities set forth below, the Stipulation and Agreement of Settlement dated November 11, 2015, filed simultaneously herewith as an exhibit to the Declaration of James J. Sabella, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 17, 2015.

1

Dated:        November 17, 2015

2                                                          Respectfully submitted,

3                                                          **GRANT & EISENHOFER P.A.**

4                                                          By ____/s/ James J. Sabella____

5                                                          485 Lexington Avenue
                                                           New York, NY 10017

6                                                          646-722-8500

7                                                          *Attorneys for Lead Plaintiffs Oklahoma*
                                                           *Firefighters Pension & Retirement Fund*

8                                                          *and Oklahoma Law Enforcement*
                                                           *Retirement System and Lead Counsel*

9                                                          *for the Class*

10

11                                                         **WESTERMAN LAW CORP.**

12                                                         By ____/s/ Jeff S. Westerman____

13                                                         1900 Avenue of the Stars, 11th floor
                                                           Los Angeles, California  90067

14                                                         310 698-7450

15                                                         *Attorneys for Lead Plaintiffs Oklahoma*
                                                           *Firefighters Pension & Retirement Fund*

16                                                         *and Oklahoma Law Enforcement*

17                                                         *Retirement System*

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

I.   INTRODUCTION ............................................................................ 2

II.  SUMMARY OF THE LITIGATION ............................................... 3

III. SUMMARY AND REASONS FOR THE PROPOSED SETTLEMENT ..... 4

IV.  ARGUMENT .................................................................................. 5

    A.   THE LAW FAVORS AND ENCOURAGES SETTLEMENTS ............................ 5

    B.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .. 6

        1.   The Proposed Settlement Was Vigorously Negotiated and Is Supported by Experienced Counsel ............................................ 8

        2.   The Proposed Settlement Provides a Favorable Recovery for the Class ..................................................................................... 10

        3.   The Proposed Settlement Does Not Unjustly Favor Any Class Members ......................................................................... 11

        4.   The Stage of the Proceedings and Discovery Completed ........ 12

    C.   THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 .............................................. 13

        1.   Numerosity ............................................................................... 14

        2.   Commonality ............................................................................ 15

        3.   Typicality ................................................................................. 16

        4.   Adequacy .................................................................................. 17

        5.   Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication ................................. 18

    D.   THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE .......................... 20

V.   PROPOSED SCHEDULE OF EVENTS ........................................ 23

CONCLUSION ........................................................................................ 24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231 (1997) .......................................................... 16, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ................................................................................. 18, 19

*Browning v. Yahoo! Inc.*,
  2007 U.S. Dist. LEXIS 86266 (N.D. Cal. 2007) .................................................. 6

*Butler v. Sears, Roebuck and Co.*,
  727 F.3d 796 (7th Cir. 2013) ............................................................................. 19

*Carter v. Anderson Merchandisers, LP*,
  2010 U.S. Dist. LEXIS 55581 (C.D. Cal. 2010) ................................................. 10

*Chun- Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................ 10

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) ........................................................................ 19

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................... 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011) ....................................................................................... 18

*Gittin v. KCI USA, Inc.*,
  2011 WL 1467360 (N.D. Cal. 2011) ................................................................... 20

*Harris v. Vector Mktg. Corp.*,
  2011 U.S. Dist. LEXIS 48878 (N.D. Cal. 2011) .................................................. 9

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ....................................................................... 17

*Hootkins v. Chertoff*,
  2009 U.S. Dist. LEXIS 3243 (C.D. Cal. 2009) .................................................. 17

*In re Adobe Sys., Inc. Sec. Litig.,*
139 F.R.D. 150 (N.D. Cal. 1991) ..................................................... 14

*In re Charles Schwab Corp. Sec. Litig.,*
2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011) ............................... 10

*In re Cooper Cos. Inc. Sec. Litig.,*
254 F.R.D. 628 (C.D. Cal. 2009) ...........................................*passim*

*In re CV Therapeutics, Inc., Sec. Litig.,*
2007 U.S. Dist. LEXIS 98244 (N.D. Cal. 2007)............................... 12

*In re DietDrugs Prods. Liab. Litig.,*
2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)..................................... 19

*In re Emulex Corp., Sec. Litig.,*
210 F.R.D. 717 (C.D. Cal. 2002) ............................................. 16, 19

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
1992 U.S. Dist. LEXIS 14337 (C.D. Cal. 1992)................................... 9

*In re Heritage Bond Litig.,*
546 F.3d 667 (9th Cir. 2008) ........................................................ 13

*In re Heritage Bond Litig.,*
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005).......................... 5, 6, 12

*In re Informix Corp. Sec. Litig.,*
1999 WL 33456024 (N.D. Cal. 1999)............................................. 12

*In re Initial Pub. Offering Sec. Litig.,*
260 F.R.D. 81 (S.D.N.Y. 2009)..................................................... 18

*In re LDK Solar Sec. Litig.,*
255 F.R.D. 519 (N.D. Cal. 2009) ................................................. 19

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010)......................................................... 8

*In re Pac. Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995) .................................................... 6, 12

*In re Portal Software, Inc. Sec. Litig.,*
2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007)............................... 22

*In re Portal Software, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) ................................................ 11

*In re STEC Inc.*,
    2012 U.S. Dist. LEXIS 186180 (C.D. Cal. 2012) ...................................... 14, 15

*In re Surebeam Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 25022 (S.D. Cal. 2003) ............................................ 16

*In re THQ, Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 7753 (C.D. Cal. 2002) ............................................ 14

*In re UTStarcom, Inc. Sec. Litig.*,
    2010 WL 1945737 (N.D. Cal. 2010) ...................................... 13, 15, 19

*In re VeriSign, Inc. Sec. Litig.*,
    2005 U.S. Dist LEXIS 10438 (N.D. Cal. 2005) ............................................ 16

*In re Wireless Facilities*, *Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) .................................................. 5, 7

*Jenson v. First Trust Corp.*,
    2008 U.S. Dist. LEXIS 45078 (C.D. Cal. 2008) ............................................ 12

*Katz v. China Century Dragon Media, Inc.*,
    287 F.R.D. 575 (C.D. Cal. 2012) ............................................ 14

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................ 20

*Livingston v. Toyota Motor Sales USA*, *Inc.*,
    1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995) ............................................ 10

*Morales v. Stevco*, *Inc.*,
    2011 U.S. Dist. LEXIS 130604 (E.D. Cal. 2011) ............................................ 9

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ............................................ 6, 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ............................................ 15

*O'Keefe v. Mercedes-Benz USA*, *LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ............................................ 19

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................. 5

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
  611 F. Supp. 990 (C.D. Cal. 1984) ....................................................... 14

*Rafton v. Rydex Series Funds*,
  2011 U.S. Dist. LEXIS 103141 (N.D. Cal. 2011) ................................... 5

*Ramirez v. DeCoster*,
  203 F.R.D. 30 (D. Me. 2001) ................................................................ 19

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
  2008 U.S. Dist. LEXIS 95083 (C.D. Cal. 2008) ............................. 16, 17

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
  2010 U.S. Dist. LEXIS 69799 (C.D. Cal. 2010) ................................... 20

*Satchell v. Fed. Express Corp.*,
  2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007) ..................................... 9

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) .......................................................... 19, 20

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................... 7

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................. 6

*Vinh Nguyen v. Radient Pharms. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ......................................................... 15

*Wahl v. Am. Sec. Ins. Co.*,
  2011 U.S. Dist. LEXIS 59559 (N.D. Cal. 2011) ................................... 20

*Wehner v. Syntex Corp.*,
  117 F.R.D. 641 (N.D. Cal. 1987) ......................................................... 15

*West v. Circle K Stores, Inc.*,
  2006 WL 1652598 (E.D. Cal. 2006) ..................................................... 17

*Williams v. Costco Wholesale Corp.*,
  2010 U.S. Dist. LEXIS 19674 (S.D. Cal. 2010) ................................. 7, 8

*Yamner v. Boich*,
    1994 WL 514035 (N.D. Cal. 1994) .................................................................. 15

*Ybarrondo v. NCO Fin. Sys., Inc.*,
    2009 WL 3612864 (S.D. Cal. 2009) ................................................................ 18

*Young v. Polo Retail, LLC*,
    2006 U.S. Dist. LEXIS 81077 (N.D. Cal. 2006) .............................................. 8

**STATUTES AND RULES**

15 U.S.C. §78u-4(a)(4) ........................................................................................ 12

15 U.S.C. §78u-4(a)(6) ........................................................................................ 12

15 U.S.C. §78u-4(a)(7) ........................................................................................ 21

Securities Exchange Act of 1934 § 10(b) .............................................................. 3

SEC Rule 10b-5 ...................................................................................................... 3

Fed. R. Civ. P. 23 ........................................................................................ *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

Court-appointed Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System ("Lead Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the settlement in the above-captioned action ("Action"), and entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith.  The Preliminary Approval Order would, among other things:  (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement dated November 11, 2015 ("Stipulation" or "Settlement Agreement");[1] (ii) preliminarily certify the proposed class ("Class") for purposes of settlement;[2] (iii) approve the form and manner of notice of the proposed Settlement to the Class; and (iv) schedule a hearing date for final approval of the Settlement

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

[2] The proposed Class is defined as all persons and entities who purchased or otherwise acquired the common stock of Ixia between February 4, 2011 and April 3, 2013, inclusive and who were damaged thereby.  Excluded from the Class are (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) any subsidiaries of Defendants; (d) any affiliate, as that term is defined by the federal securities laws, of Ixia or any other Defendant, including the 401(k) plans of Ixia; (e) any person or entity who is a partner, executive officer, director or controlling person of Ixia (including any of their subsidiaries or affiliates) or any other Defendant; (f) any entity in which any Defendant has a controlling interest; (g) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (h) the legal representative, heirs, successors and assigns of any such excluded party. Also excluded from the Class are the persons and/or entities who request exclusion from the Class within the time period set by the Court in the Preliminary Approval Order, in accordance with the requirements set forth in the Notice Of Proposed Securities Class Action Settlement, Application Of Attorneys' Fees And Expenses, And Settlement Fairness Hearing, attached to the Stipulation as Exhibit C.

("Settlement Fairness Hearing") and a schedule for various deadlines in connection with the Settlement.

## I.     INTRODUCTION

Although Plaintiffs have not yet been able to file a complaint that the Court deems sufficient to overcome a motion to dismiss, they have nevertheless been able to negotiate a settlement that provides substantial monetary benefit to the Class.  The parties have reached an agreement to resolve the Class's claims against Ixia ("Ixia" or "the Company"), Victor Alston, Atul Bhatnagar, Thomas B. Miller and Errol Ginsberg (the "Individual Defendants" and, collectively with Ixia, "Defendants") that provides for the payment of $3,500,000 for the benefit of the Class.

The Settlement comes after nearly two years of litigation and the briefing of multiple motions to dismiss, followed by well-informed and extensive arm's-length negotiations between experienced and knowledgeable counsel, facilitated by retired federal judge Hon. Layn Phillips, an accomplished mediator.  By the time the Settlement was reached, Grant & Eisenhofer P.A. ("Lead Counsel") and/or its agents had: (i) conducted an extensive investigation, including review of filings with the Securities and Exchange Commission ("SEC"), press releases, news reports, and analyst reports; (ii) filed two amended complaints, with two rounds of extensive briefing on those pleadings, and had drafted a third amended complaint; (iii) consulted with accounting and damages experts; (iv) conducted exhaustive research of the applicable law for claims in this Action and the potential defenses thereto; (v) conducted multiple interviews with former Ixia employees; (vi) and participated in a hard-fought, arm's-length mediation process.  In addition, Lead Plaintiffs had the benefit of two lengthy decisions by this Court on Defendants' motions to dismiss, which detailed the considerable problems Lead Plaintiffs faced in trying to pursue their claims against Defendants.

Based on an informed evaluation of the facts and governing legal principles and their recognition of the substantial risk and expense of continued litigation, the parties respectfully submit that the proposed Settlement is fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Lead Plaintiffs respectfully move for preliminary approval and submits this Memorandum of Points and Authorities in support thereof.

## II.   SUMMARY OF THE LITIGATION

On November 4, 2013, a class action complaint styled *Felix Santore v. Ixia, et al.*, Case No. CV13-08440 was filed in the United States District Court for the Central District of California.  This complaint alleged that Defendants had made misrepresentations or omissions of material facts concerning Ixia's financial condition in violation of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 thereunder.  The complaint further alleged that the Individual Defendants violated section 20(a) of the Exchange Act.

On March 24, 2014, the Court appointed Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System as Lead Plaintiffs and Grant & Eisenhofer P.A. as lead counsel for the putative class.

On June 11, 2014, Lead Plaintiffs filed the Amended Class Action Complaint.  Defendants moved to dismiss, and by Order filed October 6, 2014, the Court dismissed the Amended Class Action Complaint, with leave to replead.  On November 5, 2014, Lead Plaintiffs filed the Second Amended Class Action Complaint.  Defendants again moved to dismiss, and by Order filed April 14, 2015, the Court dismissed the Second Amended Class Action Complaint, again with leave to replead.

Lead Counsel commenced preparing Lead Plaintiffs' Third Amended Complaint, which was due May 14, 2015.  In the midst of Lead Counsel's drafting of the Third Amended Complaint, the parties raised the subject of mediating a possible settlement of the litigation.  On April 24, 2015, which was prior to the

date on which Lead Plaintiffs were to file the Third Amended Complaint, the Court entered an Order staying the case pending the outcome of mediation.

The parties thereafter engaged in substantial mediation efforts, including submitting detailed mediation briefs at the request of the mediator and attending a formal mediation session on July 23 at which both sides made detailed presentations regarding the strengths and weaknesses of their cases.  During the mediation, Judge Phillips was assisted by Robert Fairbank and Kimberly West.  The mediation was attended by multiple persons, including Ixia's counsel, the Individual Defendants' counsel, Lead Counsel, and counsel to Ixia's primary insurance carrier.  The parties were not able to reach final resolution during that session; however, following an additional three weeks of arm's-length negotiations, on August 14, the parties reached an agreement-in-principle to settle the Action.  Thereafter, the parties negotiated a formal agreement and executed the Stipulation.

## III.   SUMMARY AND REASONS FOR THE PROPOSED SETTLEMENT

Lead Plaintiffs entered this Settlement with a solid understanding of the strengths and weaknesses of their claims.  This understanding is based on Lead Counsel's (or its agents') extensive investigation and discovery during the prosecution of this Action which has included, *inter alia*: (i) review and analysis of filings made with the SEC by Ixia during the relevant time period, which reached back a number of years before commencement of the Class Period and including filings of Ixia after the end of the Class Period; (ii) review and analysis of securities analyst reports, press releases, and media reports regarding Ixia and other publications issued by and through the Company; (iii) review and analysis of pleadings in related actions; (iv) interviews with numerous former employees of the Company; (v) research of the applicable law with respect to the claims asserted in the Action and potential defenses thereto; and (vii) consultation with experienced accounting experts and damages experts.  In addition, Lead Plaintiffs

had the benefit of two lengthy decisions by this Court on Defendants' motions to dismiss, which detailed the considerable problems Lead Plaintiffs faced in trying to pursue their claims against Defendants.

Based on a careful analysis of the considerations listed above, as well as the substantial expense and length of time necessary to prosecute this Action through the completion of merits and expert discovery, trial and appeals, and the considerable uncertainties in predicting the outcome of complex litigation, Lead Plaintiffs concluded that a substantial risk existed that the Class could recover less than the Settlement, or nothing, if the Action were to continue. Judge Phillips also supports the Settlement and, indeed, the agreement is the result of efforts and suggestions by Judge Phillips and Mr. Fairbank as well as vigorous arm's length negotiations. Accordingly, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.[3]

## IV.   ARGUMENT

### A.   THE LAW FAVORS AND ENCOURAGES SETTLEMENTS

Rule 23 requires judicial approval of any compromise of claims brought on a class-wide basis. Rule 23(e) ("The claims…of a certified class may be settled…only with the court's approval."). "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

---

[3] *See generally Rafton v. Rydex Series Funds*, 2011 U.S. Dist. LEXIS 103141 (N.D. Cal. 2011) (order issued preliminarily certifying proposed class, granting preliminary approval of the notice of settlement to class members, and approving form of such notice; setting final approval hearing and appointing claims administrator); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008) (same).

1982).   "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *39 (N.D. Cal. 2007) ("public and judicial policies strongly favor settlement of class action law suits").

Moreover, the Ninth Circuit expressly recognizes that:

> [I]n making its assessment pursuant to Rule 23(e), the Court's[] "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *10 (quoting *Officers for Justice*, 688 F.2d at 625).   Recognizing that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

## B.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Approval of a class action settlement requires two stages of judicial approval:  (i) preliminary approval, followed by the distribution of notice to the class; and (ii) final approval. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("the approval of a class action settlement takes place in two stages").  "In the first stage of the approval process, 'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class…, and authorize[s] notice to be given to the Class.'" *Id.*

At this initial preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval." *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *15-16 (S.D. Cal. 2010); *see also Wireless Facilities*, 253 F.R.D. at 612. At this stage, however, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable and adequate. Rather, that evaluation is made only at the final approval stage, after notice of the proposed Settlement has been given to the members of the Class and Class Members have had an opportunity both to voice their views of the proposed Settlement and to exclude themselves from the Class. *See Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-15 ("Given that some [] factors cannot be fully assessed until the Court conducts a Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'").[4]

By this motion, Lead Plaintiffs are now only requesting that the Court take the first step in the settlement review process. To this end, "[p]reliminary approval of a settlement and notice to the proposed class is appropriate: '[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the

---

[4] In connection with final approval of the proposed Settlement, the Court will be asked to review the following factors identified by the Ninth Circuit: (1) the amount offered in Settlement; (2) the reaction of the Class Members to the proposed Settlement; (3) the strength of Lead Plaintiffs' case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of Lead Counsel; (7) the risk of maintaining class action status throughout the trial; and (8) the absence of collusion. *Id.*; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993) (citing *Officers for Justice*, 688 F.2d at 625).

class, and [4] falls with the range of possible approval….'" *Williams*, 2010 U.S.

Dist. LEXIS 19674, at *15.[5]

　　　As demonstrated below, the proposed Settlement is a fair result in light of the circumstances present in this Action. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class's claims (*i.e.*, scienter), and the continued risks if the parties were to proceed to trial, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing. Indeed, the ever shifting landscape of Private Securities Litigation Reform Act of 1995 ("PSLRA") litigation demonstrates the risks of further litigation. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) (affirming grant of summary judgment in PSLRA case on loss causation grounds). Accordingly, the proposed Settlement satisfies the criteria for assessing preliminary approval of a proposed settlement set forth above, and the proposed Settlement is well within the range of possible approval.

### 1. The Proposed Settlement Was Vigorously Negotiated and Is Supported by Experienced Counsel

　　　Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See*, *e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is

---

[5] *See also Young v. Polo Retail*, *LLC*, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. 2006) ("'If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'").

entitled to considerable weight"); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *7 (C.D. Cal. 1992) (same).  Here, counsel for the parties have been actively litigating this Action since its commencement in 2013, during which time Lead Counsel has conducted an extensive investigation into the alleged claims.  In addition, Lead Counsel took into account this Court's two decisions granting Defendants' motions to dismiss, which demonstrated the considerable problems Lead Plaintiffs faced in trying to pursue their claims against Defendants.

Lead Counsel engaged in a rigorous negotiation process with defense counsel, and fully considered and evaluated the fairness of the Settlement to the Class.  The parties' settlement negotiations were hard-fought, and included the determined assistance of an experienced mediator.  At Judge Phillips's direction, the parties submitted comprehensive mediation statements.  Counsel for all parties attended a formal settlement conference before Judge Phillips and gave aggressive, detailed and thoughtful presentations on the perceived strengths and weaknesses of their respective cases.  It was only after several weeks of intense discussions resulting in a mediator's proposal that the parties were ultimately able to reach an agreement-in-principle.  Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007).[6]

---

[6] *See Morales v. Stevco, Inc*., 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. 2011) (Granting preliminary approval because, among other things, "[t]he parties utilized an impartial mediator, and the matter was 'resolved by means of a mediator's proposal.'  Thus, the agreement is the product of non-collusive conduct."); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes.  This further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of

*(Cont'd)*

Additionally, throughout the Action and settlement negotiations, Defendants have been vigorously represented by Bryan Cave LLP, Drinker Biddle & Reath LLP, and Caldwell Leslie & Proctor, PC.  Defense counsel were therefore equally well-informed regarding the case and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class. *See Livingston v. Toyota Motor Sales USA*, *Inc.*, 1995 U.S. Dist. LEXIS 21757, at *16-17 (N.D. Cal. 1995).  Because the Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel and a highly qualified mediator, it deserves preliminary approval.

## 2. The Proposed Settlement Provides a Favorable Recovery for the Class

As set forth above, the Settlement provides for the cash recovery of $3,500,000 to be allocated among Class Members following deduction of Court-approved fees and expenses.  Particularly in light of the fact that Lead Plaintiffs had not yet been able to state a claim sufficient to overcome a motion to dismiss, and the Court's opinions demonstrated that they would face considerable difficulty in doing so, this is an excellent result for the class.

Even if the Third Amended Complaint survived the next round of motions to dismiss and the Action continued, Lead Plaintiffs and the putative Class faced numerous factual and legal obstacles and risks.  Defendants adamantly deny any wrongdoing and, as they did in their multiple motions to dismiss, Defendants were prepared to argue at trial that they did not act with the requisite scienter, that the statements at issue were not misleading, and that the Individual Defendants were not control persons of Ixia.  *See In re Charles Schwab Corp.*

_____

collusion or bad faith by the parties or counsel."); *Chun- Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (same); *Carter v. Anderson Merchandisers*, *LP*, 2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. 2010) (same).

*Sec. Litig.*, 2011 U.S. Dist. LEXIS 44547, at *19 (N.D. Cal. 2011) ("[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery…risks included proving loss causation and the falsity of the representations at issue."). Further, even if Defendants were found liable, there were significant differences between the damage calculations presented by the parties.

The Settlement's immediate benefit must therefore be compared to the real risk that the Class would lose the next motion to dismiss, or at summary judgment, at trial or on appeal.  Thus, Lead Plaintiffs believe that the proposed Settlement is fair and adequate given the risk and uncertainty of further litigation, and the possibility that, even if Lead Plaintiffs prevailed at trial, they might not be able to obtain a judgment for the Class in an amount greater than or even equal to the proposed Settlement.  *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. 2007) ("[T]he risk, expense, complexity and likely duration of further litigation…favor settlement because further litigation would entail substantial risk to the class of recovering nothing.  Any further litigation would likely be complex, expensive and a favorable outcome improbable.  Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").  Given the foregoing risks and after extensive investigation and research, Lead Plaintiffs and Lead Counsel have concluded that $3,500,000 is a reasonable and fair amount and represents a substantial recovery for the Class.

### 3.     The Proposed Settlement Does Not Unjustly Favor Any Class Members

The Plan of Allocation (Exhibit F to the Stipulation) provides for distribution of the Settlement Fund (after deduction of Court-approved fees and expenses) to Class Members who have a loss on their transactions in Ixia common stock purchased or otherwise acquired during the Class Period (*i.e.*,

between February 4, 2011 and April 3, 2013, inclusive).   The formula to apportion the Net Settlement Fund among Class Members is based on when they purchased, acquired and/or sold their shares of common stock, as developed by Lead Plaintiffs' damages consultant.   This method ensures that Class Members' recoveries are based upon the relative losses they sustained.   All Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.   Lead Plaintiffs will share in the Net Settlement Fund in the same proportion as all Class Members.

Additionally, the fees and expenses that Lead Counsel will seek in this Action – not to exceed 25% of the Settlement Amount plus out-of-pocket expenses, not to exceed $260,000, plus interest on both amounts – are reasonable. *See* 15 U.S.C. §78u-4(a)(4) & (6).[7]   In complex securities litigation such as this, courts in this Circuit have routinely awarded larger or a similar percentage for attorneys' fees. *See*, *e.g.*, *Mego*, 213 F.3d at 460 (affirming award of one-third of the total recovery).[8]

### 4.     The Stage of the Proceedings and Discovery Completed

The stage of the proceedings and discovery completed are additional factors supporting the Settlement. As discussed in detail above, Lead Counsel (or its agents) engaged in extensive investigation, research, and analysis of the

---

[7] Lead Counsel will submit further briefing in support of its request for an award of attorneys' fees and reimbursement of expenses along with its submission for final approval of the Settlement prior to the Settlement Fairness Hearing.

[8] *Pac. Enters.*, 47 F.3d at 379 (awarding 33% of $12 million fund); *Jenson v. First Trust Corp.*, 2008 U.S. Dist. LEXIS 45078, at *10 (C.D. Cal. 2008) (awarding 33% of $8.5 million fund); *In re CV Therapeutics, Inc.*, *Sec. Litig.*, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. 2007) (awarding 30% of fund); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *61 & n.14 (awarding one-third because "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions"); *In re Informix Corp. Sec. Litig.*, 1999 WL 33456024 (N.D. Cal. 1999) (awarding 30% of fund).

Class's claims. Lead Counsel also reviewed and considered the points made in this Court's two decisions granting Defendants' motions to dismiss, which further enabled Lead Plaintiffs and Lead Counsel to evaluate the likelihood of overcoming the upcoming motions to dismiss the Third Amended Complaint and of prevailing at summary judgment and at trial. These factors enabled Lead Plaintiffs and Lead Counsel to make an informed decision as to the appropriateness of the Settlement that is being submitted to the Court.

The Settlement is reasonable and within the range of possible approval. Lead Plaintiff therefore respectfully asks the Court to grant preliminary approval of the Settlement and direct that notice be given to the Class.

## C.   THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only. *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. In addition, the class must meet one of the three requirements of Rule 23(b). *See* Rule 23; *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *3 (N.D. Cal. 2010) (citing *Hanlon*, 150 F.3d at 1019). The proposed Class is defined in the Stipulation as follows:

> all persons and entities who purchased or otherwise acquired the publicly traded common stock of Ixia between November 28, 2007 and August 17, 2010, inclusive. Excluded from the Class are Defendants, the directors and officers of Ixia and their families and affiliates. Also excluded from the Class are all persons and entities who exclude themselves from the Class by timely requesting exclusion in accordance with the requirements set forth in the Notice.

Courts routinely endorse the use of the class action device to resolve claims brought under the federal securities laws. *See*, *e.g.*, *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) and *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)); *In re THQ, Inc. Sec. Litig.,* 2002 U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. 2002).   "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud [and] [a]ccordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also Cooper*, 254 F.R.D. at 642 ("'The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.'") (quoting *Blackie*, 524 F.2d at 903).   This Action is no exception, and Lead Plaintiffs submit that the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.   "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 582-83 (C.D. Cal. 2012) (citing *Harris*, 329 F.2d at 913-14).   Indeed, classes consisting of 25 members have been held to be large enough to justify certification. *See Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also In re STEC Inc.*, 2012 U.S. Dist. LEXIS 186180, at *11 (C.D. Cal. 2012) ("There is no fixed number of class members that compels or precludes class certification...").   Additionally, "'the exact size of the class

1    need not be known so long as general knowledge and common sense indicate that

2    the class is large.'" *Id.*; *see also Vinh Nguyen v. Radient Pharms. Corp.*, 287

3    F.R.D. 563, 569 (C.D. Cal. 2012) ("'[W]here the exact size of the proposed class

4    is unknown, but general knowledge and common sense indicate it is large, the

5    numerosity requirement is satisfied.'").

6         Here, Ixia, which traded on NASDAQ, had more than 68 million shares of

7    stock outstanding during the Class Period.  "The Court certainly may infer that,

8    when a corporation has millions of shares trading on a national exchange, more

9    than 40 individuals purchased stock over the course of more than a year.  It is

10   likely that thousands of people made such purchases." *See Cooper*, 254 F.R.D. at

11   634.  A class of this size is sufficiently numerous to make joinder impracticable.

12   *Id.*; *see also UTStarcom*, 2010 WL 1945737, at *4; *Yamner v. Boich*, 1994 WL

13   514035, at *3 (N.D. Cal. 1994).

14              **2.     Commonality**

15        Rule 23(a)(2) is satisfied where class members share at least one common

16   question of fact or law.  *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal.

17   1987); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488

18   (C.D. Cal. 2006) ("The commonality requirement is generally construed

19   liberally; the existence of only a few common legal and factual issues may satisfy

20   the requirement.").  Further, "a few factual variations among the class grievances

21   will not defeat commonality so long as class members' claims arise from 'shared

22   legal issues' or 'a common core of salient facts.'"  *Cooper*, 254 F.R.D. at 634

23   (citing *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)).   Here, the

24   common questions of fact and law include: (i) whether Defendants violated the

25   Exchange Act; (ii) whether Defendants omitted and/or misrepresented material

26   facts; (iii) whether Defendants' statements omitted material facts necessary in

27   order to make the statements made, in light of the circumstances under which

28   they were made, not misleading; (iv) whether Defendants knew or recklessly

disregarded that their statements were false and misleading; (v) whether the price of Ixia common stock was artificially inflated; and (vi) the extent of damage sustained by Class Members and the appropriate measure of damages.  *See Cooper*, 254 F.R.D. at 635 (finding common questions of law and fact as to "whether Defendants falsely represented material facts," "whether Defendants knew that their statements were false and misleading," and "whether the price of [defendant company's] publicly traded securities was artificially inflated").

Here, there are common questions of law and fact because Defendants' alleged misconduct affected all members of the proposed Class in the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated the price of Ixia's stock.  *See*, *e.g.*, *In re VeriSign, Inc. Sec. Litig.*, 2005 U.S. Dist LEXIS 10438, at *32 (N.D. Cal. 2005) ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).  Securities actions containing common questions such as the ones listed above repeatedly have been held to be prime candidates for class certification.

### 3.    Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the proposed class representative are typical of the claims or defenses of other class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997) (common-issues test readily met in securities cases); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083, at *18 (C.D. Cal. 2008).  "'[D]ifferences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases.'"  *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022, at *18 (S.D. Cal. 2003).  In other words, "'a strong similarity of legal

theories will satisfy the typicality requirement despite substantial factual differences'" between the claims of the named representative and other class members. *Rivera*, 2008 U.S. Dist. LEXIS 95083, at *19; *see also West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *5 (E.D. Cal. 2006).

Here, the claims of Lead Plaintiffs arise from the same events or course of conduct that give rise to claims of other Class Members and are based on the same legal theory.  Lead Plaintiffs, like other Class Members, purchased or otherwise acquired Ixia common stock during the Class Period at artificially inflated prices and suffered damages when Defendants' alleged misstatements and omissions were disclosed to investors, causing the price of the Company's common stock to decline.  All Class Members were victims of this same alleged common course of conduct throughout the Class Period, and, as Lead Plaintiffs allege, sustained damages as a result.  *Id.*  Thus, the proof that Lead Plaintiffs would present to establish his claims would prove the claims of the rest of the Class.  Additionally, Lead Plaintiffs are not subject to any unique defenses that could render him an atypical member of the Class.  Therefore, Lead Counsel respectfully submits that this Court should find typicality satisfied.  *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011); *Cooper*, 254 F.R.D. at 635-36.

### 4.    Adequacy

The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that they will fairly and adequately protect the interests of the Class. The Ninth Circuit sets forth a two-prong test for Rule 23(a)(4)'s adequacy requirement: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Hootkins v. Chertoff*, 2009 U.S. Dist. LEXIS 3243, at *20 (C.D. Cal. 2009) (citing *Hanlon*, 150 F.3d at 1020).  As described above, Lead Plaintiffs have claims that are

typical of and coextensive with those of the Class.  Lead Plaintiffs, like all Class Members, purchased or otherwise acquired Ixia common stock at artificially inflated prices as a result of Defendants' alleged misleading statements and/or omissions.  Further, Lead Plaintiffs has retained counsel highly experienced in securities class action litigation and who has successfully prosecuted many securities and other complex class actions throughout the United States. *See* Docket Item No. 21 Exhs. G, H.  Moreover, as detailed in Section II above, Lead Plaintiffs and their counsel have vigorously litigated this Action.  Thus, Lead Plaintiffs are adequate representatives of the Class, and their counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### 5.   Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires that the proposed class representative establish that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).[9]  "[C]ommon issues need only predominate, not outnumber

---

[9] When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under Rule 23(b)(3) may be relaxed because the court does not need to consider the difficulties of managing the class in any future litigation or at trial.  *See*, *e.g.*, *Ybarrondo v. NCO Fin. Sys.*, *Inc.*, 2009 WL 3612864, at *7 n.3 (S.D. Cal. 2009); *Murillo*, 266 F.R.D. at 477.  Indeed, courts have certified class actions for settlement purposes even where certification was or likely would have been denied for litigation purposes.  *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that included §11 claimants who had been excluded from the litigation class on

*(Cont'd)*

individual issues." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013).  Further, the superiority of class actions in large securities cases is well recognized.   *See Amchem Prods.*, 521 U.S. at 625 (common questions predominated in securities class action certified for settlement).

As discussed above, there are a number of common questions of law and fact that would warrant class certification here.   These questions clearly predominate because Defendants' alleged conduct affected all Class Members in the same manner.  *See*, *e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").   Indeed, issues relating to Defendants' liability are common to all Class Members.  *Id.*; *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009); *UTStarcom*, 2010 WL 1945737, at *9 (same); *Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation [sic] Defendants made during the Class Period and are common to the class.").

Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common."  *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010); *see also Cooper*, 254 F.R.D. at 640-41; *Amgen*, 133 S.

---

grounds of "predominance") (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were intertwined and "because the litigation was no longer going to trial, manageability was no longer an issue, and the 'predominance defect [] no longer fatal'")); *Columbus Drywall & Insulation*, *Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (same); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (same); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (same); *In re DietDrugs Prods. Liab. Litig.*, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) (same).

Ct. at 1191 ("[T]he materiality of [defendants'] alleged misrepresentations and omissions is a question common to all members of the class."). Likewise, here, Defendants' alleged misstatements during the Class Period "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and causation will "be made on a class-wide basis." *Schleicher*, 618 F.3d at 685, 687; *Cooper*, 254 F.R.D. at 641. As a result, common questions of law and fact predominate.

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Class for settlement purposes, appointing Lead Plaintiffs as class representatives, and appointing Lead Counsel as counsel for the Class. *See*, *e.g.*, *Wahl v. Am. Sec. Ins. Co.*, 2011 U.S. Dist. LEXIS 59559, at *5-6 (N.D. Cal. 2011) (class certified for settlement purposes); *Gittin v. KCI USA, Inc.*, 2011 WL 1467360, at *1 (N.D. Cal. 2011) (same).

### D.   THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23 (e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Moreover, notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).[10]

---

[10] *See also Sandoval v. Tharaldson Emp. Mgmt.*, *Inc.*, 2010 U.S. Dist. LEXIS 69799, at *29 (C.D. Cal. 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment."); *Immune Response*, 497 F. Supp. 2d at 1170 (same).

Here, the parties negotiated the form of the Notice to be disseminated to all persons and entities who fall within the Class definition and whose names and addresses have been or can be identified from or through Ixia's shareholder lists. In addition, the Claims Administrator will mail copies of the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities.[11]  The parties further propose to supplement the mailed Notice with the Summary Notice, to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.[12] Lead Counsel will also make copies of the Notice, Summary Notice, Plan of Allocation and Proof of Claim available for download *via* the website maintained by the Claims Administrator ("Website").  The Website address is set forth in the Notice and Summary Notice.  In addition, the Website will provide the SAC and other important pleadings, as well as important information regarding the Action and proposed Settlement.

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."   The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees not to exceed 25% of the Settlement Amount and reimbursement of out-of-pocket expenses not to exceed $260,000, plus interest earned on both amounts at the same rate earned on the Settlement Fund, to be paid from the Settlement Fund.  The proposed Notice includes all of the information required by the PSLRA, *see* 15 U.S.C. §78u-4(a)(7), as well as

---

[11] In connection with this motion, Lead Plaintiffs also respectfully request that the Court authorize the retention of Angeion Group, an experienced and diligent class action claims administrator, for the Settlement.

[12] The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits C and D.

additional information.  The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history and status of the litigation; (2) the definition of the proposed Class and who is excluded from the Class; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement; (5) the estimated average recovery per damaged share; (6) the Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval; (10) the plan for allocating the Settlement proceeds to the Class; and (11) the date, time and place of the final settlement hearing.

Further, the proposed Notice discusses the rights Class Members have in connection with the Settlement, including: (1) the right to request exclusion from the Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator.  The Notice also provides contact information for Lead Counsel and counsel for the Defendants, as well as the postal address for the Court.

As detailed above, the notice program proposed in connection with the Settlement and the form and content of the Notice, Summary Notice and Proof of Claim more than satisfy the requirements of the Federal Rules of Civil Procedure and the PSLRA.  Moreover, courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23 and the PSLRA.[13]

---

[13] *See, e.g.*, *In re Portal Software*, *Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *19 (N.D. Cal. 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (Fourth) §21.311 (2004) ("'Publication in magazines, newspapers, or trade journals may

*(Cont'd)*

Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiff respectfully requests that the Court also approve the proposed form and method of giving notice to the Class.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events (*i.e.*, mailing of the Notice and publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Class, objecting to the Settlement, submitting claim forms and the fairness hearing).  The parties suggest a schedule based on the following time intervals:

| Event | Proposed Time for Compliance |
| --- | --- |
| Deadline for mailing the Notice and Proof of Claim to Class Members[14] ("Notice Date") | 30 calendar days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶7) |
| Deadline to publish the Publication Notice on Claims Administrator's website | 60 days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Deadline for Ixia to (1) file a Form 8-K attaching the Publication Notice and (2) publish the Publication Notice on its website | 60 days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶9) |
| Deadline for publishing the Publication Notice[15] | 60 calendar days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶8) |
| Deadline for filing papers in support of final settlement approval, plan of allocation, request for attorneys' fees and expenses to Lead Counsel | 30 calendar days before the date scheduled for the Fairness Hearing (Preliminary Approval Order, ¶18) |

be necessary if individual class members are not identifiable after reasonable effort."")).

[14] *See* Exhibit C to the Stipulation.

[15] *See* Exhibit D to the Stipulation.

| Deadline for requesting exclusion from the Class. or for filing an objection to the Settlement, plan of allocation, request for attorneys' fees and expenses to Lead Counsel | 21 calendar days prior to the date of the Fairness Hearing (Preliminary Approval Order, ¶¶14-16) |
|---|---|
| Deadline for filing reply papers | 7 calendar days prior to the Fairness Hearing (Preliminary Approval Order, ¶18) |
| Settlement Fairness Hearing | Approximately 120 calendar days following the entry of the proposed Preliminary Approval Order (Preliminary Approval Order, ¶3) |
| Deadline for submitting Proof of Claim and Release forms | 120 calendar days following the Notice Date (Preliminary Approval Order, ¶20) |

## VI.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully submit that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval.  Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) preliminarily certify the proposed Class for settlement purposes; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Dated:  November 17, 2015

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By ____/s/ James J. Sabella____
485 Lexington Avenue
New York, NY 10017
646-722-8500

*Attorneys for Lead Plaintiffs Oklahoma*
*Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement*
*Retirement System and Lead Counsel*
*for the Class*

**WESTERMAN LAW CORP.**

By _/s/   Jeff S. Westerman____
1900 Avenue of the Stars, 11th floor
Los Angeles, California  90067
310 698-7450

*Attorneys for Lead Plaintiffs Oklahoma*
*Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement*
*Retirement System*