Exhibit 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, and ERROL GINSBERG,<br><br>Defendants. | Case No. CV13-08440-MMM (SH)<br><br>Assigned to<br>Judge Margaret M. Morrow |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Securities Class Action Settlement Agreement") is made pursuant to Rule 23 of the Federal Rules of Civil Procedure in the above-titled litigation (the "Securities Class Action"). Subject to approval of this Court, this Securities Class Action Settlement Agreement is entered into among Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System (collectively, "Lead Plaintiffs") and Defendants Victor Alston, Atul Bhatnagar, Thomas B. Miller, Errol Ginsberg (the "Individual Defendants") and Ixia (collectively, "Defendants").

I.    **RECITALS**

WHEREAS, the parties hereto state the following:

A.    **The Securities Litigation**

On November 4, 2013, a class action complaint styled *Felix Santore v. Ixia, et al.*, Case No. CV13-08440 was filed in the United States District Court for the Central District of California (the "Complaint"). This complaint alleged that Defendants had made misrepresentations or omissions of material facts concerning Ixia's financial condition in violation of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC

1

1882781 0363661

Rule 10b-5 thereunder.  The complaint further alleged that the Individual Defendants violated section 20(a) of the Exchange Act.

On March 24, 2014, the Court appointed Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System as Lead Plaintiffs and Grant & Eisenhofer P.A. as lead counsel for the putative class.

On June 11, 2014, Lead Plaintiffs filed the Amended Class Action Complaint.  Ixia; Atul Bhatnagar, Errol Ginsberg and Thomas B. Miller; and Victor Alston each moved to dismiss the Complaint, and by Decision and Order filed October 6, 2014, which was published as *Oklahoma Firefighters Pension & Retirement Sys. v. Ixia*, 50 F. Supp.3d 1328 (C.D. Cal. 2014), the Court dismissed the Amended Class Action Complaint, with leave to replead.

On November 5, 2014, Lead Plaintiffs filed the Second Amended Class Action Complaint.  Ixia; Atul Bhatnagar, Errol Ginsberg and Thomas B. Miller; and Victor Alston each again moved to dismiss the Complaint, and by Order filed April 14, 2015, the Court dismissed the Second Amended Class Action Complaint, again with leave to replead.

On April 24, 2015, which was prior to the date on which Lead Plaintiffs were to file the Third Amended Class Action Complaint, the Court entered an Order staying the case pending the outcome of mediation.

**B.      Settlement Negotiations and the Reasons for the Settlement**

On July 23, 2015, a mediation session was held at the offices of Bryan Cave LLP, counsel for Ixia ("Mediation"), in New York City, presided over by the mediator, retired United States District Judge Hon. Layn Phillips.  Judge Phillips was assisted by Robert Fairbank and Mary Anne Mullin at the Mediation.  The Mediation was attended by Ixia's counsel, the Individual Defendants' counsel, Lead Plaintiffs' counsel, counsel to Ixia's primary insurance carrier and a representative of Ixia's primary insurance carrier.  Although substantial progress was made, no agreement was reached at the Mediation.  With the assistance of the mediators, discussions between the parties continued, resulting in the execution of a Term Sheet signed by counsel for all parties on or about August 14, 2015, which sets forth the essential terms of the settlement.

SETTLEMENT AGREEMENT

## II.   TERMS OF THE SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by and among the Lead Plaintiffs (individually and in their representative capacity), by and through their duly authorized counsel, and Defendants, by and through their duly authorized counsel, that this Securities Class Action and all matters that have been, could have been or could be raised in the Securities Class Action are hereby settled and compromised, that this Securities Class Action will be dismissed on the merits and with prejudice as to Defendants, and that the Released Plaintiffs' Claims will be released as to Defendants and all other Releasees based upon the terms and conditions set out in this Securities Class Action Settlement Agreement (including the Release), subject to the Court's approval and such approval becoming Final.

### A.   Definitions

1.   As used in this Securities Class Action Settlement Agreement, the following capitalized terms have the following meanings, unless a Section or Subsection of this Securities Class Action Settlement Agreement provides otherwise:

a.   "Securities Class Action" means *Oklahoma Firefighters Pension & Retirement System v. Ixia, et al.*, Case No. CV13-08440 (C.D. Cal.).

b.   "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

c.   "Approval Date" means the date on which the Court enters the Order Approving Settlement and Final Judgment.

d.   "Attorneys' Fees and Expenses Application" means the application for fees and expenses to be made by Lead Counsel pursuant to paragraph 12 below.

e.   "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Lead Counsel (and any other counsel representing Lead Plaintiffs).

f.   "Authorized Claim" means a claim for recovery from an Authorized Claimant that has been found to be timely and valid under the terms of this Securities Class Action Settlement Agreement.

3

g.      "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successor, affiliates or assigns) whose claim for recovery has been found to be timely and valid under the terms of this Securities Class Action Settlement Agreement.

h.      "Bar Orders" means the Contribution Bar Order and the Complete Bar Order.

i.      "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses of any sort whatsoever, whether in law, in admiralty or in equity, and whether based on a United States federal, state or foreign statutory or common-law United States federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known, accrued or not accrued, existing now or to be created in the future, including "Unknown Claims" (as defined below).

j.      "Claim Form" means the form that Class Members must submit to the Settlement Administrator in order to receive relief pursuant to Section I of this Securities Class Action Settlement Agreement, which will, subject to Court approval, be substantially in the form set out in Exhibit A.

k.      "Class" or "Class Members" means all persons and entities who purchased or otherwise acquired the common stock of Ixia between February 4, 2011 and April 3, 2013, inclusive, and who were damaged thereby.  Excluded from the Class are (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) any subsidiaries of Defendants; (d) any affiliate, as that term is defined by the federal securities laws, of Ixia or any other Defendant, including the 401(k) plans of Ixia; (e) any person or entity who is a partner, executive officer, director or controlling person of Ixia (including any of their subsidiaries or affiliates) or any other Defendant; (f) any entity in which any Defendant has a controlling

4
SETTLEMENT AGREEMENT
1882781 0363661

interest; (g) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (h) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Class are the persons and/or entities who request exclusion from the Class within the time period set by the Court in the Preliminary Approval Order.

        l.  "Complaint" means the Second Amended Class Action Complaint.

        m.  "Complete Bar Order" means that portion of the Order Approving Settlement and Final Judgment, the text of which will be substantially in the form set out in paragraph 11 of Exhibit B, which the Settling Parties will ask the Court to enter and which is an essential term of this Settlement.

        n.  "Contribution Bar Order" means that portion of the Order Approving Settlement and Final Judgment, the text of which will be substantially in the form set out in paragraph 10 of Exhibit B, which will be entered by the Court pursuant to Section 21D(f)(7)(A) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f)(7)(A).

        o.  "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to control the direction of the management and policies of the entity, whether through ownership of voting shares, by contract, or otherwise.

        p.  "Court" means the United States District Court for the Central District of California.

        q.  "Effective Date" means the first date by which all of the events and conditions specified hereafter occur: (i) execution of this Settlement Agreement and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties, (ii) the Settlement Payment has been deposited into the Escrow Account, (iii) Defendants have not exercised their option to terminate the Settlement Agreement pursuant to Section M, hereof, (iv) the Court has approved the Individual Notice, substantially in the form of Exhibit C hereto, (v) the Court has entered the Judgment that, *inter*

*alia*, dismisses with prejudice the Securities Class Action and (vi) the Judgment has become Final, as defined in Section A(u) hereof.

r. "Escrow Account" means the Ixia Settlement Escrow Account to be established by Lead Counsel at M&T Bank, the interest-bearing account into which the Settlement Payment will be paid pursuant to Section C of this Securities Class Action Settlement Agreement, which account will be treated for tax purposes as a single Qualified Settlement Fund, as defined below.

s. "Escrow Agent" means the escrow agent for the Escrow Account. The Escrow Agent will be Grant & Eisenhofer P.A.

t. "Fairness Hearing" means the hearing at or after which the Court will make a decision (*i*) whether to approve the Settlement as fair, reasonable and adequate; (*ii*) whether to finally certify the Settlement Class; and (*iii*) whether to grant the Attorneys' Fees and Expenses Application.

u. "Final" means, when used in connection with any court judgment or order, that the judgment or order will be final: (1) if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any potential extension of time) has expired; or (2) if any appeal is taken from the order and judgment, the date on which all such appeals – including any petitions for rehearing *en banc*, petitions for *certiorari* or any other form of review and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant judgment or order.

v. "Individual Notice" means the notice described in Section E of this Agreement that will be disseminated to Class Members to inform them of the proposed Settlement, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit C to this Securities Class Action Settlement Agreement.

w. "Investment Decision" means a decision regarding an investment in Ixia securities, including, without limitation, a decision to hold Ixia's securities after purchasing or acquiring them.

6

SETTLEMENT AGREEMENT

1882781 0363661

x.      "Judgment" means the final judgment to be entered by the Court pursuant to the Order Approving Settlement Final Judgment, which shall be substantially in the form set out in Exhibit B to this Securities Class Action Settlement Agreement.

y.      "Lead Counsel" means the law firm of Grant & Eisenhofer P.A., including all of its attorneys, employees, and representatives.

z.      "Net Cash Settlement Amount" means the balance remaining in the Escrow Account (including any interest that has accrued) after the payments described in paragraph 98(1)-(3) below are made from the Escrow Account.

aa.      "Nominees" means brokerage firms, banks and other institutions that hold Ixia securities in street name or other similar fashion for the benefit of other persons or entities.

bb.      "Notice and Administrative Expenses" means all expenses associated with administration and implementation of this Settlement, including the Settlement Administrator's fees and expenses; *provided, however*, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses.

cc.      "Objection Date" means the date by which objections to the Settlement proposed in this Securities Class Action Settlement Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

dd.      "Order Approving Settlement and Final Judgment" means the order to be entered by the Court approving the Settlement and this Securities Class Action Settlement Agreement as contemplated in Section K of this Securities Class Action Settlement Agreement, which order shall be substantially in the form set out in Exhibit B to this Securities Class Action Settlement Agreement.

ee.      "Plan of Allocation" means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to, Authorized Claimants, which shall, subject to Court approval, be substantially in the form attached hereto as Exhibit F.

1882781 0363661

ff.     "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.*

gg.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

hh.     "Preliminary Approval Hearing" means the hearing at or after which the Court preliminarily approves the proposed Settlement.

ii.     "Preliminary Approval Order" means the order to be entered by the Court concerning notice, administration and the Fairness Hearing, as contemplated in Section J of this Securities Class Action Settlement Agreement, which order shall be substantially in the form set out in Exhibit E to this Securities Class Action Settlement Agreement.

jj.     "Publication Notice" means the notice described in Section D of this Securities Class Action Settlement Agreement, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit D to this Securities Class Action Settlement Agreement.

kk.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

ll.     "Recognized Claim" shall have the meaning attributed to it in the Plan of Allocation.

mm.     "Release" means the release set forth in Section I of this Securities Class Action Settlement Agreement.

nn.     "Released Defendants' Claims" means each and every Claim that has been, could have been, or could be asserted in the Securities Class Action or in any other proceeding by any Releasee, including any Defendant, or the successors and assigns of any Releasee, against any Lead Plaintiff, any other Class Member, any other Releasor, or their attorneys (including Lead Counsel), including any consultants, experts or other professionals retained by Lead Counsel during the course of this litigation, that arises out of or relates in any way to the institution, prosecution, investigation, defense or settlement of the Securities Class Action, including any or all of the acts, failures to act, omissions, misrepresentations, facts,

8

SETTLEMENT AGREEMENT

events, matters, transactions, occurrences, or oral or written statements or representations of Releasors; provided, however, the foregoing shall not include any Claims to enforce this Securities Class Action Settlement Agreement or any other documents executed in connection with this Securities Class Action Settlement; provided, further, that notwithstanding anything to the contrary contained in this Securities Class Action Settlement Agreement: (*i*) no release shall be made by any party of its own attorneys, and (*ii*) if any attorney performed work for more than one party, a party does not release that attorney for the work such attorney performed for the party, but does release such attorney for the work such attorney performed for any other party.  It is understood that any in-house attorney for Ixia is intended to be included in and fully released hereunder.

oo.    "Released Plaintiffs' Claims" means any and all Claims, debts, demands, actions, causes of action, specialties, covenants, contracts, variances, damages, executions, rights, suits, sums, accounts, reckonings, presentments, extents and any other liabilities, fixed or contingent, matured or not matured, of or by the Class, or any member or representative of the Class, as against the Releasees, including both known claims and Unknown Claims, whether class or individual in nature, that were asserted, could have been asserted, could in the future be asserted, or are related to the claims that were, could have been, or could in the future be asserted, in the Securities Class Action or in any other action or proceeding, or otherwise, by the Class, or by any member or representative of the Class (including, without limitation, any claims for alleged violations of federal or state statutory or common law, or any other law, and for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), arising from or relating to the purchase or acquisition of common stock of Ixia between February 4, 2011 and April 3, 2013, inclusive; *provided, however*, that the term "Released Plaintiffs' Claims" does not include any claims to enforce this Securities Class Action Settlement Agreement or any other documents executed in connection with this Securities Class Action Settlement; provided, further that notwithstanding anything to the contrary contained in this Securities Class Action Settlement Agreement: (i) no release shall be made by any party of its own attorneys, and (ii) if any attorney performed work for more than

9

SETTLEMENT AGREEMENT

1882781 0363661

1   one party, a party does not release that attorney for the work such attorney performed for the

2   party, but does release such attorney for the work such attorney performed for any other party.  It

3   is understood that any in-house attorney for Ixia is intended to be included in and fully released

4   hereunder.

5         pp.  "Releasee" means each and every one of, and "Releasees" means

6   all of, (*i*) Ixia, (*ii*) the Individual Defendants, and (*iii*) the past and present officers, directors,

7   employees, officials, members, partners, principals, agents, representatives, attorneys (including

8   any and all in-house and outside counsel including, without limitation, Defendants' Counsel),

9   advisors, administrators, auditors (including any and all internal and external auditors),

10  accountants, actuaries, consultants, fiduciaries, representatives, service providers, successors-in-

11  interest, trustees, insurance carriers, reinsurers, estates, heirs, executors, beneficiaries, trusts,

12  assigns *of any or all* of the above persons or entities.

13        qq.  "Releasor" means each and every one of, and "Releasors" means

14  all of, (*i*) Lead Plaintiffs, (*ii*) all other Class Members, (*iii*) their respective past or present

15  parents, predecessors, successors, current and former Affiliates, divisions, business units, joint

16  ventures, subsidiaries, assigns, any entities in which any Releasor has or had a Controlling

17  Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity

18  (including any governmental entity) claiming by or through, on behalf of, for the benefit of,

19  derivatively for, or as representative of Lead Plaintiffs or any other Class Member and (*iv*) the

20  respective past and present officers, directors, employees, officials, members, partners,

21  principals, agents, representatives, attorneys (including any and all in-house and outside

22  counsel), advisors, administrators, auditors (including any and all internal and external auditors),

23  accountants, actuaries, consultants, fiduciaries, representatives, service providers, successors-in-

24  interest, trustees and insurance carriers, reinsurers, estates, heirs, executors, beneficiaries, trusts,

25  trustees and assigns of any or all of the above persons or entities.

26        rr.  "Securities Class Action Settlement Agreement" means this

27  Stipulation and Agreement of Settlement and its Exhibits attached hereto, including any

28  subsequent written amendments to the Stipulation of Settlement and/or to its Exhibits.

10

SETTLEMENT AGREEMENT

ss.      "Settlement" means the settlement terms, conditions and other provisions that are memorialized in this Securities Class Action Settlement Agreement.

tt.      "Settlement Administrator" means Angeion Group.

uu.      "Settling Parties" means all parties to this Securities Class Action Settlement Agreement.

vv.      "Settlement Payment" means $3,500,000.

ww.      "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Securities Class Action Settlement Agreement under Section M of this Securities Class Action Settlement Agreement.

xx.      "Unknown Claims" means any and all (*i*) Released Class Members' Claims that any Releasor does not know or suspect exists with respect to one or more Releasees at the time of the release of the Releasees or (*ii*) Released Defendants' Claims that any Releasee does not know or suspect exists with respect to one or more Releasors at the time of the release of the Releasors, which, if known by such Releasee or Releasor (as the case may be) might have affected his, her or its decision(s) concerning this Securities Class Action Settlement Agreement.  As to all Claims released in this Securities Class Action Settlement Agreement, each of the Lead Plaintiffs, Ixia, Individual Defendants, and Defendants' Counsel expressly waives, and each Class Member shall be deemed to have waived, and by operation of the Order Approving Settlement and Final Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of federal or common law, that is similar, comparable or equivalent to California Civil Code Section 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

1882781 0363661

Lead Plaintiffs, Ixia, Individual Defendants, and Defendants' Counsel acknowledge, and all other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the Claims released pursuant to the Securities Class Action Settlement Agreement was separately bargained for and is a key element of this Securities Class Action Settlement Agreement.

**B.     Class Certification**

2.     For purposes of this Settlement only, and subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Settling Parties stipulate to the certification of the Class, as defined herein; the appointment of Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System as Class Representatives; and the appointment of Grant & Eisenhofer P.A. as Class Counsel.

**C.     Settlement Consideration**

3.     In consideration of the Settlement of Claims asserted in this Securities Class Action, and subject to the terms and conditions of the Securities Class Action Settlement Agreement, within fifteen (15) business days following the date of entry of the Preliminary Approval Order, provided Ixia's primary insurance carrier has received the name, address and telephone number for both the payee and recipient of the Settlement Payment and a properly completed Form W-9 for the payee of the Settlement Payment, Defendants shall cause a check in the amount of the Settlement Payment to be delivered to the Escrow Account.

**D.     Notice to Class Members and Other Communications**

4.     Subject to the requirements of the Preliminary Approval Order, Lead Counsel shall cause the Individual Notice and the Claim Form, substantially in the forms annexed hereto as Exhibits C and A, respectively, to be mailed, by first class mail, postage prepaid, within thirty (30) days after the entry of the Preliminary Approval Order, to all Class Members at the address of each such person as set forth in the records of Ixia or its transfer agent, or who otherwise can be identified through reasonable effort.  Ixia shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, and Ixia shall use reasonable efforts to cause or arrange for Ixia's transfer agent to provide to the

1882781 0363661

Settlement Administrator, no later than five (5) business days after entry of the Preliminary Approval Order, records concerning the identity of potential Class Members and their transactions (consisting of shareholder names and addresses), in electronic form.  Lead Counsel shall, at least thirty (30) days before the Fairness Hearing, file with the Court proof of mailing of the Individual Notice and Claim Form.

5.     Subject to the requirements of the Preliminary Approval Order, within sixty (60) days after the entry of the Preliminary Approval Order (i) Lead Counsel shall cause the Publication Notice, substantially in the form annexed hereto as Exhibit D, to be published once in Investor's Business Daily and the PR Newswire; (ii) Ixia shall file a Form 8-K attaching the Publication Notice; (iii) Ixia shall publish the Publication Notice on its website; and (iv) the Settlement Administrator shall publish the Publication Notice on its website.  A copy of the Publication Notice, substantially in the form as set out in Exhibit D, shall be submitted to the Court for approval at the time the Settling Parties submit this Securities Class Action Settlement Agreement to the Court for Preliminary Approval.

6.     Ixia expressly reserves the right to communicate with and respond to inquiries by shareholders.

7.     Any party to the Settlement or its counsel wishing to issue a press release or other public statement shall provide counsel for all other parties to the Settlement reasonable opportunity to review and comment upon the release.

8.     The parties to the Settlement shall cooperate to ensure than any media statements regarding the settlement are balanced, fair, accurate and non-disparaging.

**E.     Notice and Administrative Expenses**

9.     Notice and Administrative Expenses, other than those associated with the posting of notice on the websites of Ixia and Lead Counsel, shall be paid out of the Qualified Settlement Fund.

**F.     Objections by Class Members**

10.     Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Agreement, to any term(s) of this Agreement or to the proposed Attorneys' Fees

13

SETTLEMENT AGREEMENT

and Expenses Award may do so no later than twenty-one (21) days before the Fairness Hearing, and subject to the requirements set out in the Preliminary Approval Order.

11.     Objectors' attorneys must file notice(s) of appearance.

**G.     Attorneys' Fees and Expenses**

12.     Lead Counsel shall file and serve the Attorneys' Fees and Expenses Application not later than thirty (30) days prior to the Fairness Hearing.

13.     Any Attorneys' Fees and Expenses Award will be subject to approval by the Court.

14.     The Attorneys' Fees and Expenses shall be paid to Lead Counsel (as designated by the Court) from the Escrow Account established pursuant to Section C above within fifteen (15) business days from the date on which the Court makes such award; *provided, however* that such payments shall be subject to an agreement by Lead Counsel providing that such payment (or relevant portion of such payment) shall be returned to the Escrow Account within five (5) business days from the Lead Counsel receiving notice that (i) the Court's approval of the Securities Class Action Settlement Agreement has been reversed on appeal and such reversal has become Final and no longer subject to appeal or (ii) the award made to Lead Counsel has been modified on appeal.

**H.     Settlement Administrator**

15.     The Settlement Administrator shall be appointed by Lead Counsel subject to the approval of the Defendants, which approval shall not be unreasonably withheld.

16.     The Settlement Administrator shall administer the process of receiving, reviewing and approving or denying claims under Lead Counsel's supervision and subject to the jurisdiction of the Court.  The Defendants shall have no responsibility for the administration of the Settlement and shall have no liability to the Class Members or Lead Counsel in connection with this administration.  Lead Counsel shall designate a contact person at the Settlement Administrator to whom Defendants may refer all inquiries they receive from potential claimants.

17.     The Settlement Administrator shall receive Claims and determine first, whether the Claim is an Authorized Claim, in whole or in part; and second, each Authorized

14

SETTLEMENT AGREEMENT

1  Claimant's pro rata share of the Net Cash Settlement Amount based upon each Authorized

2  Claimant's Loss Amount (as set forth in the Plan of Allocation described in the Notice annexed

3  hereto as Exhibit C, or in such other Plan of Allocation as the Court approves).

4          18.     The Qualified Settlement Fund shall be applied as follows:

5          (1)     to pay counsel's attorneys' fees and expenses with interest

6  thereon and the expenses of Plaintiffs (the "Fee and Expense Award"), if and to the extent

7  allowed by the Court;

8          (2)     to pay all the costs and expenses reasonably and actually

9  incurred in connection with providing notice, locating Class Members, soliciting Class claims,

10  assisting with the filing of claims, administering and distributing the Net Settlement Fund to

11  Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, if any;

12          (3)     to pay the taxes and tax expenses; and

13          (4)     to distribute the balance of the Settlement Fund to

14  Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or order of the Court.

15          19.     The Plan of Allocation attached hereto as Exhibit F is not a necessary term

16  of this Securities Class Action Settlement Agreement, and it is not a condition of this Securities

17  Class Action Settlement Agreement that any particular Plan of Allocation be approved.

18          20.     Each Authorized Claimant shall be allocated a pro rata share of the Net

19  Cash Settlement Amount based on his, her or its Loss Amount compared to the total Loss

20  Amounts of all Authorized Claimants.  This is not a claims-made settlement.  The Defendants

21  shall not be entitled to get back any of the Settlement consideration once the Effective Date has

22  occurred.

23          21.     Any Class Member who does not submit a valid Claim Form will not be

24  entitled to receive any distribution from the Net Cash Settlement Amount, but will otherwise be

25  bound by all of the terms of this Securities Class Action Settlement Agreement and the

26  Settlement, including the terms of the Final Judgment to be entered in the Securities Class Action

27  and the Releases provided for herein, and will be barred and enjoined from bringing any action

28  against the Releasees concerning the Released Claims.

1882781 0363661

22.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Cash Settlement Amount by the Settlement Administrator.  The Defendants shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Cash Settlement Amount.  The Defendants shall not be permitted to review, contest or object to any Claim Form or any decision of the Settlement Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

23.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.     Each Class Member shall be required to submit a Claim Form substantially in the form attached hereto as Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Settlement Administrator or Lead Counsel, in their discretion, may deem acceptable.

b.     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Cash Settlement Amount or payment pursuant to this Securities Class Action Settlement Agreement (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Securities Class Action Settlement Agreement and the Settlement including the terms of the Final Judgment and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims.  A Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.

c.     Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, under the supervision of Lead Counsel, who shall determine in

16

SETTLEMENT AGREEMENT

accordance with this Securities Class Action Settlement Agreement, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

d.      Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Settlement Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Settlement Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

e.      If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

f.      The administrative determinations of the Settlement Administrator in accepting and rejecting Claims shall be presented to the Court, on notice to Ixia's Counsel, for approval by the Court.

24.      Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, *provided, however* that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of the Securities Class Action or Settlement in connection with the processing of Claim Forms.

1882781 0363661

25.     Lead Counsel will apply to the Court, on notice of Ixia's Counsel, for a Class Distribution Order: (a) approving the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.

26.     The Net Cash Settlement Amount shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Individual Notice and approved by the Court.  Any such Plan of Allocation is not a part of this Stipulation. No funds from the Net Cash Settlement Amount shall be distributed to Authorized Claimants until the Effective Date.  If there is any balance remaining in the Net Cash Settlement Amount after six (6) months from the date of distribution of the Net Cash Settlement Amount (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Net Cash Settlement Amount shall be donated to one or more secular §501(c)(3) organization(s) selected by Lead Counsel, with prior written notice to Defendants' counsel.

27.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Cash Settlement Amount, but otherwise shall be bound by all of the terms of this Securities Class Action Settlement Agreement and the Settlement, including the terms of the Final Judgment to be entered in the Securities Class Action and the releases provided for herein, and will be barred and enjoined from bringing any action against any and all of the Releasees concerning any and all of the Settled Claims.

28.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including

18

SETTLEMENT AGREEMENT

1   disputed questions of law and fact with respect to the validity of Claims, shall be subject to the

2   jurisdiction of the Court.

3          29.     The Settlement Administrator is to be charged with, among other things,

4   distribution of the individual notice, publication of the publication notice (except that notice

5   published on the website of Ixia), operation of a settlement website relating to both this

6   Settlement, setting up and running a toll-free center to respond to shareholder calls, receipt of

7   requests for exclusion and distribution of settlement relief to class members in the Settlement.

8   **I.     Releases and Waivers**

9          30.     Pursuant to the Order Approving Settlement and Final Judgment, without

10  further action by anyone, and whether or not a Claim Form has been executed and/or delivered

11  by or on behalf of any such Class Member, on and after the Effective Date, Lead Plaintiffs and

12  all other Class Members, on behalf of themselves and their other Releasors, for good and

13  sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and

14  of the Order Approving Settlement and Final Judgment shall have, fully, finally, and forever

15  released, relinquished, settled, and discharged:

16         a.     all Released Plaintiffs' Claims against each and every one of the

17  Releasees, including Defendants' Counsel;

18         b.     all Claims, damages, and liabilities as to each and every one of the

19  Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all

20  acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written

21  statements or representations in connection with, or directly or indirectly relating to, (*i*) the

22  prosecution, defense, or settlement of the Securities Class Action, (*ii*) the Securities Class Action

23  Settlement Agreement, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of

24  notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms

25  filed in connection with the Settlement; and

26         c.     all Claims against any of the Releasees for attorneys' fees, costs, or

27  disbursements incurred by Lead Plaintiff's counsel (including Lead Counsel) or any other

28  counsel representing Lead Plaintiff or any other Class Member in connection with or related in

19

SETTLEMENT AGREEMENT

1882781 0363661

any manner to the Securities Class Action, the settlement of the Securities Class Action, or the administration of the Securities Class Action and/or its settlement, except to the extent otherwise specified in the Securities Class Action Settlement Agreement.

31.     Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, on and after the Effective Date, each and all Releasees, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.     Each and all Releasors, including Lead Counsel, from any and all Released Defendants' Claims, except to the extent otherwise specified in this Securities Class Action Settlement Agreement; and

b.     Each and all other Releasees from any and all Claims relating to or arising from the Securities Class Action, Released Plaintiffs' Claims or Released Defendants' Claims, except to the extent otherwise specified in this Securities Class Action Settlement Agreement; *provided, however,* that Defendants' attorneys do not release any Claims relating to unpaid attorneys' fees and expenses, and Ixia and the Individual Defendants do not release any Claims relating to their insurance or reinsurance policies except to the extent that Ixia and/or the Individual Defendants have otherwise agreed.

32.     Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, on and after the Effective Date, Lead Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Securities Class Action or to the Securities Class

1882781 0363661

Action Settlement Agreement, except to the extent otherwise specified in the Securities Class Action Settlement Agreement.

33.     Nothing in the Order Approving Settlement and Final Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Securities Class Action Settlement Agreement or the Order Approving Settlement and Final Judgment.

34.     Pending final determination of whether the Settlement should be approved and applied in the Securities Class Action, neither Lead Plaintiffs, nor any of the Class Members, shall commence, maintain or prosecute against Defendants, the Released Class Persons, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Defendants' Claims or Released Plaintiffs' Claims.

35.     The releases and waivers contained in this Section were separately bargained for and are essential elements of the Securities Class Action Settlement Agreement.

**J.     Preliminary Approval Hearing and Preliminary Approval Order**

36.     Within twenty (20) business days following the execution of this Securities Class Action Settlement Agreement, Lead Plaintiffs shall file a motion for Preliminary Approval of the Securities Class Action Settlement Agreement, which motion Defendants shall not oppose if consistent with the terms of the Settlement.

**K.     Fairness Hearing, Order Approving Settlement and Final Judgment and Dismissal**

37.     The Settling Parties shall request that the Court schedule a Fairness Hearing at which to consider whether (*i*) to approve this Agreement as fair, reasonable and adequate and in the best interest of the Class; (*ii*) finally certify the Settlement Class; and (*iii*) to approve Lead Counsel's request for an Attorneys' Fees and Expenses Award.

**L.     No Admissions**

38.     This Securities Class Action Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it:

a.     shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by

21

SETTLEMENT AGREEMENT

any of the Defendants with respect to the truth of any fact alleged by plaintiffs or the validity of any claim that had been or could have been asserted against the Defendants in the Securities Class Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

            b.      shall not be offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant, or against the Lead Plaintiffs or any other Class Members as evidence of any infirmity on the claims of the Lead Plaintiffs or the other Class Members;

            c.      shall not be offered or received against the Defendants or against the Lead Plaintiffs or any other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Securities Class Action Settlement Agreement; *provided, however,* that if this Securities Class Action Settlement Agreement is approved by the Court, Defendants may refer to it to effectuate the liability protection granted them hereunder;

            d.      shall not be construed against Defendants, Lead Plaintiffs or any other Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

            e.      shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or other Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement amounts; and/or

            f.      shall not be construed as or received in evidence as an admission, concession or presumption that class certification is appropriate in this Securities Class Action.

SETTLEMENT AGREEMENT

1882781 0363661

**M.** **Modification or Termination of this Securities Class Action Settlement Agreement**

39.     The terms and provisions of this Securities Class Action Settlement Agreement may not be altered, amended or modified except in writing signed by all Settling Parties.

40.     Any Settling Party shall have the right to terminate the Settlement if the Court does not approve the Securities Class Action Settlement Agreement, or if the Court (or any appellate court) modifies the Settlement Agreement in any way that a Settling Party to the Settlement in good faith determines is material.

41.     Lead Plaintiffs may not terminate the Settlement based on the fee award.

42.     Each Defendant in the Securities Class Action shall have the option (but not the obligation) to terminate the Settlement if valid exclusion requests are received from eligible Class Members as provided for by separate agreement as specified in the Term Sheet, not to be filed with the Court unless necessary to establish that such option to terminate has been triggered; *provided, however,* that exercise of this termination option must be made no later than three (3) days before the date on which the Fairness Hearing is scheduled.

43.     Unless otherwise ordered by the Court, in the event the Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' counsel or counsel to the Escrow Agent, the Settlement Payment (including accrued interest), less reasonable notice and administration expenses which have either been incurred or disbursed pursuant to Section H hereof, shall be refunded pursuant to written instructions from Defendants' counsel.  If said amount or any portion thereof is not returned within thirty (30) business days after receiving written instructions from Defendants' counsel, then interest shall accrue thereon at the same rate as earned by the Settlement Payment until the date that said amount is returned.

44.     At the request of Defendants' counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Payment and return the proceeds, after

23

SETTLEMENT AGREEMENT

1  deduction of any expenses incurred in connection with such application(s) for refund, in

2  accordance with the written direction of Defendants' counsel.

3      45.    Lead Plaintiffs have the right to terminate the Settlement if Defendants fail

4  to timely and completely fund the Settlement in accordance with this Settlement Agreement.

5      **N.**    **Miscellaneous Provisions**

6      46.    All of the exhibits attached hereto are hereby incorporated by reference as

7  though fully set forth herein.

8      47.    The parties to this Securities Class Action Settlement Agreement intend

9  the Settlement to be a final and complete resolution of all disputes asserted or which could be

10  asserted by the Lead Plaintiffs, any other Class Members and their attorneys against the

11  Releasees with respect to the Claims.  Accordingly, Lead Plaintiffs and Defendants agree not to

12  assert in any forum that the Securities Class Action was brought by plaintiffs or defended by

13  Defendants in bad faith or without a reasonable basis.  The parties hereto shall assert no claims

14  of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution,

15  defense or settlement of the Securities Class Action.  The parties agree that the amount paid and

16  the other terms of the Settlement were negotiated at arm's-length in good faith by the parties,

17  including a mediation conducted by a professional mediator, and reflect a settlement that was

18  reached voluntarily after consultation with experienced legal counsel.

19      48.    This Securities Class Action Settlement Agreement may not be modified

20  or amended, nor may any of its provisions be waived, except in writing signed by all signatories

21  hereto or their successors-in-interest.

22      49.    The headings herein are used for the purpose of convenience only and are

23  not meant to have legal effect.

24      50.    The administration and consummation of the Settlement as embodied in

25  this Securities Class Action Settlement Agreement shall be under the authority of the Court, and

26  the Court shall retain jurisdiction for the purpose of entering orders providing for awards of

27  attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this

28  Securities Class Action Settlement Agreement.

1882781 0363661

51.     The waiver by one party of any breach of this Securities Class Action Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Securities Class Action Settlement Agreement.

52.     This Securities Class Action Settlement Agreement and its exhibits constitute the entire agreement among the parties hereto concerning the Settlement of the Securities Class Action, and no representations, warranties or inducements have been made by any party hereto concerning this Securities Class Action Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

53.     This Securities Class Action Settlement Agreement may be executed in one or more original and/or faxed counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument *provided, however,* that counsel for the signatories of this Securities Class Action Settlement Agreement shall exchange among themselves original signed counterparts.

54.     This Securities Class Action Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

55.     The construction, interpretation, operation, effect and validity of this Securities Class Action Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

56.     This Securities Class Action Settlement Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties, and all parties have contributed substantially and materially to the preparation of this Securities Class Action Settlement Agreement.

57.     All counsel and any other persons executing this Securities Class Action Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to

1882781 0363661

1   take appropriate action required or permitted to be taken pursuant to the Securities Class Action

2   Settlement Agreement to effectuate its terms.

3   Dated: November 11, 2015

4

5   **GRANT & EISENHOFER P.A.**                    **BRYAN CAVE LLP**

6   By _____                   By _____

7      James J. Sabella                                Eric Rieder
       485 Lexington Avenue                            Courtney J. Peterson
8      New York, NY 10017                              1290 Avenue of the Americas
9      646-722-8500                                    New York, NY 10104
       *Attorneys for Lead Plaintiffs Oklahoma*        212-541-2000
10     *Firefighters Pension & Retirement Fund and*    *Attorneys for Defendant Ixia*
       *Oklahoma Law Enforcement Retirement*
11     *System and Lead Counsel for the Class*

12  **WESTERMAN LAW CORP.**                         **DRINKER BIDDLE & REATH LLP**

13

14  By _____                   By _____

15     Jeff S. Westerman                               Sheldon Eisenberg
       1900 Avenue of the Stars, 11th floor            1800 Century Park East, Suite 1500
16     Los Angeles, California 90067                   Los Angeles, CA 90067
       310 698-7450                                    310-203-4000
17     *Attorneys for Lead Plaintiffs Oklahoma*        *Attorneys for Defendants Atul Bhatnagar,*
       *Firefighters Pension & Retirement Fund and*    *Thomas B. Miller and Errol Ginsberg*
18     *Oklahoma Law Enforcement Retirement*
19     *System*

20                                                  **CALDWELL LESLIE & PROCTOR, PC**

21

22                                                  By _____
                                                       Christopher Caldwell
23                                                     Benjamin Au
                                                       725 South Figueroa Street, 31st floor
24                                                     Los Angeles, CA 90017
                                                       213-629-9040
25                                                     *Attorneys for Defendant Victor Alston*

26

27

28

                                    26
                        SETTLEMENT AGREEMENT

188278 | 0363661