**WESTERMAN LAW CORP.**
Jeff S. Westerman (SBN 94559)
1875 Century Park East, 22nd Floor
Los Angeles, Ca. 90067
Telephone: (310) 698-7450
Fax: (310) 201-9160
jwesterman@jswlegal.com

**GRANT & EISENHOFER P.A.**
James J. Sabella (admitted pro hac vice)
John C. Kairis (admitted pro hac vice)
Diane Zilka (admitted pro hac vice)
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500
Fax: (646) 722-8501
jsabella@gelaw.com
jkairis@gelaw.com
dzilka@gelaw.com

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement Retirement System*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, and ERROL GINSBERG,<br><br>     Defendants. | Case No. CV13-08440-DMG(SHx)<br><br>**NOTICE OF MOTION AND MOTION FOR THE AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   July 29, 2016<br>Time:   10:00 a.m.<br>Courtroom: 7<br>Judge:  Hon. Dolly M. Gee |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that, on July 29, 2016 at 10:00 a.m., in Courtroom 7 of the United States District Court for the Central District of California, U.S. Courthouse, 312 North Spring Street, Los Angeles, California 90012, the Honorable Dolly M. Gee presiding, Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System will and hereby do move for an Order awarding attorneys' fees and authorizing reimbursement of expenses for Lead Plaintiffs' counsel and the costs related to the notice program and claims administration in this litigation conducted by Angeion Group ("Angeion" or the "Claims Administrator").

The grounds for this motion are that the requested award of attorneys' fees and expenses are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declaration of James J. Sabella, the Declaration of Jeff Westerman, the Joint Declaration of Robert E. Jones and Ginger Sigler, the Declaration of Sanjay Pansari, the Declaration of Brian Manigault, the other pleadings and records on file in this action, and such other matters and arguments as the Court may consider at the hearing of this motion.

Dated:  June 10, 2016

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By ___/s/ James J. Sabella____
485 Lexington Avenue
New York, NY 10017
646-722-8500

*Attorneys for Lead Plaintiffs Oklahoma
Firefighters Pension & Retirement Fund
and Oklahoma Law Enforcement
Retirement System and Lead Counsel
for the Class*

**WESTERMAN LAW CORP.**

By ___/s/ Jeff S. Westerman____
1875 Century Park East, 22nd Floor
Los Angeles, California  90067
310 698-7450

*Attorneys for Lead Plaintiffs Oklahoma
Firefighters Pension & Retirement Fund
and Oklahoma Law Enforcement
Retirement System*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

SUMMARY OF PLAINTIFFS' COUNSEL'S WORK IN THIS ACTION ......... 2

ARGUMENT............................................................................................................ 4

I.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND
      REASONABLE.......................................................................................... 4

      A.    THE RELEVANT FACTORS SUPPORT THE REQUESTED FEE AWARD ..... 4

            1.    The Results Obtained............................................................. 5

            2.    The Effort Expended by Counsel .......................................... 6

            3.    Counsel's Experience ............................................................ 6

            4.    Counsel's Skill....................................................................... 7

            5.    The Complexity of the Issues ................................................ 8

            6.    The Risk of Non-Payment Assumed by Counsel.................... 8

            7.    The Reaction of the Class...................................................... 9

            8.    Comparison with Counsel's Lodestar .................................. 10

      B.    THE PERCENTAGE REQUESTED IS FAIR AND REASONABLE ............... 11

II.   THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS
      FAIR AND REASONABLE...................................................................... 12

CONCLUSION...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Aichele v. City of Los Angeles*,

    2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) .......................................... 4, 5, 11

*In re Am. Apparel*, *Inc. Shareholder Litig.*,

    2014 WL 10212865 (C.D. Cal. July 28, 2014) ......................................... 9, 12

*In re Apollo Group Inc. Sec. Litig.*,

    2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ................................... 9

*Chun-Hoon v.McKee Foods Corp.*,

    716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................................. 11

*Destefano v. Zynga, Inc.*,

    2016 WL 537946 (N.D. Cal. Feb. 2, 2016) ..................................................... 12

*In re Equity Funding Corp. Sec. Litig.*,

    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................... 8

*Fernandez v. Victoria Secret Stores LLC*,

    2008 WL 8950856 (C.D. Cal. July 21, 2008) ................................................. 10

*In re Heritage Bond Litig*,

    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................. 7

*In re Immune Response Sec. Litig.*,

    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................. 6

*Knight v. Red Door Salons, Inc.*,

    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................. 9-10

*In re Marsh & McLennan Cos. Sec. Litig.*,

    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................... 8

*In re Media Vision Tech. Sec. Litig.*,

    913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................ 13

*Moore v. IMCO Recycling of CA, Inc.*,

    2005 WL 5887180 (C.D. Cal. Sept. 28, 2005)................................................. 13

*Morales v. City of San Rafael*,

    96 F.3d 359 (9th Cir. 1996) .............................................................................. 10

*In re OCZ Tech. Group, Inc. Sec. Litig.*,

    2015 WL 7687710 (N.D. Cal. June 12, 2015) ................................................... 5

*In re Omnivision Tech., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 5, 6, 7, 8

*Pelletz v. Weyerhaeuser Co.*,

    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ...................................................... 10

*In re Rite Aid Corp.*,

    396 F.3d 294 (3d Cir. 2005) ............................................................................ 10

*Robbins v. Koger Props., Inc.*,

    116 F.3d 1441 (11th Cir. 1991) ......................................................................... 9

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009)......................................................................... 8-9

*Sadowska v. Volkswagen Group. of Am., Inc.*,

    2013 WL 9600948 (C.D. Cal. Sept. 25, 2013)............................................... 10

*Schiller v. David's Bridal, Inc.*,

    2012 WL 2117001 (E.D. Cal. June 11, 2012)................................................ 11

*In re Telik, Inc. Sec. Litig.*,

    576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 5

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ........................................................................ 10

*In re Wash. Public Power Supply Sys. Sec. Litig.*,

    19 F.3d 1291 (9th Cir. 1994) ............................................................................ 8

*Wing v. Asarco*,

    114 F.3d 986 (9th Cir. 1997) ..................................................................... 8, 11

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,

    556 F.3d 815 (9th Cir. 2009) ............................................................................ 10

**S**TATUTES AND **R**ULES

15 U.S.C. § 78u-4(a)(6) ...................................................................................... 5

Fed. R. Civ. P. 23(h) .................................................................................. 4, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System respectfully submit this Memorandum Of Points And Authorities in support of their motion for an award of attorneys' fees, reimbursement of litigation costs and expenses incurred in prosecuting this action, and for approval to pay the Settlement Administrator the fees and expenses related to the notice program and the administration and implementation of the Settlement.[1]  Pursuant to the Settlement Agreement, Plaintiffs' Lead Counsel seek a total fee award of $875,000, representing 25% of the $3,500,000 Settlement Fund, and expenses not to exceed $260,000, which includes the expenses of the notice and claims administration –which shall be paid from the Settlement Fund.

First, the requested award of attorneys' fees is appropriate given the substantial risk Counsel assumed in prosecuting this Action on a contingent basis.  Litigation, particularly securities class action litigation, is notoriously risky and complex.  In this case, the fact that the governing complaints were dismissed twice (with leave to replead) aptly demonstrates the significant hurdles and risks assumed by Counsel.

Second, the Settlement returns Class Members approximately 10% of their damages, before fees and expenses.  This is a recovery well within the typical range in a securities class action, and thus constitutes an excellent result for the Class.  Additionally, the requested fee falls well within the range of the fees typically awarded in similar cases in the Ninth Circuit.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

Third, the fairness and reasonableness of the requested fee award is confirmed by cross-checking it with Counsel's lodestar of $1,551,080.50. The cross-check shows that Counsel are seeking a fee amounting to only 56.4% of their total lodestar. The fairness and reasonableness of the requested fee award is further confirmed by the reaction of the Class – to date there have been no objections to the award and only two requests for exclusion.

Finally, the Court should grant the request for an award of $260,000 to cover costs and expenses related to the litigation, providing notice to Class Members, and administering and implementing the Settlement. All of these costs and expenses were reasonable and necessary.

**SUMMARY OF PLAINTIFFS' COUNSEL'S WORK IN THIS ACTION[2]**

The Declaration of James J. Sabella ("Sabella Decl.") sets forth in detail the work performed by Plaintiffs' Counsel in this case, which produced the settlement for the Class. A brief summary is as follows.

After the appointment of Lead Plaintiffs and Lead Counsel in March 2014, Lead Counsel commenced preparation of the Amended Complaint ("AC"). In order to do so, Lead Counsel undertook a detailed review and analysis of publicly available information, including: (i) public filings with the SEC by Ixia; (ii) research reports by securities and financial analysts; (iii) transcripts of investor conference calls; (iv) publicly available presentations by Ixia; (v) press releases and media reports; and (vi) economic analyses of securities price movements and pricing data. Sabella Decl. ¶ 18.

---

[2] The Memorandum of Points and Authorities in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, filed contemporaneously herewith, discusses the risks and legal obstacles associated with continued litigation and the value of the Settlement. Rather than repeating those matters here, this Memorandum will focus on the legal and factual standards applicable to attorneys' fees requested by plaintiffs' counsel in securities class action litigation and the reasonableness of the fees requested by Lead Counsel here.

In addition, prior to the filing of the AC, Lead Counsel retained and consulted with accounting experts to address the substantive claims particularly with respect to alleged GAAP violations, and securities fraud damages experts to assist in assessing the damages suffered by the Class and developing the claims that would ultimately be asserted. *Id.* ¶ 19.

Lead Counsel also retained the services of an investigation firm to seek out witnesses with information relevant to the allegations in the Complaint. Lead Plaintiffs included allegations in the AC based on information provided by two of those witnesses. *Id.* ¶ 20.

Drafting the AC was not an easy task. Unlike the usual case, where a securities defendant has overstated revenue during the class period, in this case Ixia had understated current revenue and overstated deferred revenue. On the basis of the investigation and analysis described above, Lead Counsel developed the theory that Ixia wanted to portray itself as a growth company, with good future prospects. In such circumstances, the AC explained, deferred revenue would be more significant than current revenue, and hence Ixia shifted revenue to future periods in order to give the appearance that the company had attractive growth prospects.

Defendants moved to dismiss the AC, and Lead Counsel prepared a lengthy opposing brief, as well as a request for judicial notice. *Id.* ¶ 23. The Court, however, granted the motion to dismiss, with leave to replead.

Lead Counsel then prepared the Second Amended Complaint ("SAC"). This involved further analysis of Ixia's SEC filings and other materials in the public record, as well as further discussions with Lead Plaintiffs' accounting experts and investigators. *Id.* ¶ 26.

Defendants again moved to dismiss, and Lead Counsel again needed to prepare lengthy opposition papers. *Id.* ¶ 30. Once again, however, the Court granted the motion, with leave to replead.

While preparation of the Third Amended Complaint ("TAC") was underway, the parties discussed the notion of mediating a possible settlement. *Id*. ¶ 34.

The parties then retained retired federal judge Layn Phillips and Robert Fairbank to mediate the case. The mediation process involved the preparation and submission of lengthy mediation briefs; a full day in-person mediation session, at which counsel for the parties made detailed presentations; and numerous subsequent follow up calls with Mr. Fairbank. *Id*. ¶¶ 36-39. Ultimately, a settlement in principal was reached. Following extensive discussions regarding the precise provisions of a settlement agreement, the Settlement Stipulation was executed on or about November 11, 2015. *Id*. ¶ 40.

## ARGUMENT

## I. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

In a certified class action, Federal Rule of Civil Procedure 23(h) authorizes the Court to "award reasonable attorney[s'] fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

### A. THE RELEVANT FACTORS SUPPORT THE REQUESTED FEE AWARD

In *Aichele v. City of Los Angeles*, 2015 WL 5286028, at *4 (C.D. Cal. Sept. 9, 2015) (Gee, J.), this Court set forth the factors relevant to fee awards in class action cases:

> It is well established in the Ninth Circuit that, while the court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel (*see, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994), the percentage of the fund is the typical method of calculating class fund fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"). While most circuits leave the method used to the discretion of the trial court, "[m]ost federal courts use the percentage of the fund approach in awarding attorneys' fees in common fund classes." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 748 (S.D. Tex. 2008).

The percentage method is particularly appropriate in a securities fraud class action.  The PSLRA provides:  "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6).  By using this language, Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008).

This Court has described the factors relevant to a fee award:

> [C]ourts often consider the following factors when determining the benchmark percentage to be applied:  (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of nonpayment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar.

*Aichele*, 2015 WL 5286028, at *2.

Lead Counsel has requested an award of 25% of the $3,500,000 Settlement Fund, which amounts to $875,000.  Consideration of the relevant factors demonstrates that this request is fair and reasonable.

### 1.    The Results Obtained

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  Here, the Settlement confers a substantial and immediate monetary benefit on the Class.  The $3,500,000 recovery represents approximately 10% of the potential recovery that Lead Plaintiffs' damage expert predicted the Class could have won if completely successful.  *See* Pansari Decl. ¶ 32 & n.19.  This result compares favorably to recoveries in other securities fraud class actions:  *See In re OCZ Tech. Group, Inc. Sec. Litig.*, 2015 WL 7687710, at *25 (N.D. Cal. June 12, 2015) (awarding 25% of $7.5 million settlement fund where the amount of the fund represented

4.5% of the total estimated damages recoverable if plaintiffs were completely successful on all issues of liability and damages); *Omnivision*, 559 F. Supp. 2d at 1046 (concluding that total award of 9% of possible damages weighed in favor of granting a requested 28% fee); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (awarding attorneys' fees of 25% of settlement fund, despite fact that the "$10 million award only represents approximately 12% of the maximum provable damages assuming complete success"). *See also* Lead Plaintiffs' Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement at 13-14.

## 2. The Effort Expended by Counsel

As set forth in the Sabella Declaration, Plaintiff's Counsel litigated this case for more than two years.  In that time, they investigated the underlying facts, including reviewing publicly available documents and obtaining information from numerous former Ixia employees about the matters at issue in the case; consulted with accounting and damages experts; prepared the AC, the SAC, and the TAC; briefed opposition to motions to dismiss the AC and the TAC; participated in a full day mediation session and numerous follow up telephone conversations with the mediator; negotiated and drafted numerous lengthy settlement documents, including the Settlement Stipulation, the preliminary approval order, the class notice and publication notice, and the claim form; and responded to inquiries from Class Members.

## 3. Counsel's Experience

Lead Counsel Grant & Eisenhofer is among the nation's most experienced law firms in the area of securities class action and has served as lead or co-lead counsel on behalf of major institutional investors in numerous securities class actions**.**  Lead Plaintiffs' local counsel, Jeff S. Westerman, is a lawyer with a

long track record of representing plaintiffs in securities class action cases throughout the country.[3]

### 4.    Counsel's Skill

As stated in *Omnivision*, 559 F. Supp. 2d at 1047, "prosecution and management of a complex national class action requires unique legal skills and ability" (internal quotation marks omitted).   As set forth in Lead Plaintiffs' Motion for Final Approval of the Settlement, Plaintiffs' counsel were able to extract a favorable settlement in very difficult circumstances.   Unlike the usual securities case, where a company improperly accelerates revenue in order to inflate its current financials, in this case Ixia improperly deferred revenue to later periods.   In order to show that such conduct could have a fraudulent motivation, Counsel advanced the argument that Ixia sought to portray itself as a "growth company," and as such was motivated to push revenues into future periods, at the expense of current periods.   The Court found this theory plausible.   *See* April 14, 2015 Order (ECF No. 116) at 44 ("Plaintiffs argue that their theory of overstating deferred revenue to create a false image of growth is plausibly alleged."); Oct. 6, 2014 Order (ECF No. 98) 42 ("plaintiffs' theory is a potentially plausible one"). Counsel's creativity in developing this theory was a substantial factor in their ability to extract a monetary settlement in this case.   Along with the fact that they were able to negotiate a settlement notwithstanding that the motions to dismiss had been granted, this illustrates the skill that Plaintiffs' Counsel possess and brought to bear in this case.

The quality of opposing counsel as a measure of the skill required to litigate the case should also be considered.   *In re Heritage Bond Litig*, 2005 U.S.

---

[3] Resumes for Grant & Eisenhofer and for Jeff S. Westerman were attached as Exhibits G and H, respectively, to the Declaration of James J. Sabella, dated Jan. 14, 2014, in support of Lead Plaintiffs' motion for appointment as lead plaintiffs in this case.   *See* ECF No. 21-1 pp. 28-82, 83.

Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005); *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *Wing v. Asarco*, 114 F.3d 986, 989 (9th Cir. 1997) (noting district court's evaluation of the job done by class counsel "in light of the quality of opposition counsel and [defendant's] record of success in this type of litigation").  Opposing counsel here were Bryan Cave LLP, Drinker Biddle & Reath LLP and Caldwell Leslie & Proctor, P.C., all prominent, well-respected firms with substantial experience defending securities class actions.  The fact that Plaintiffs' Counsel obtained this Settlement for the Class in the face of such formidable legal opposition further evidences the quality of their work.

### 5.    The Complexity of the Issues

Federal securities class actions are "notoriously complex and difficult to prove," *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *17 (S.D.N.Y. Dec. 23, 2009), and this case is no exception.  In addition to the usual complexities involving issues such as loss causation, this case presented questions as to how Ixia's warranty and maintenance contracts should have been accounted for under generally accepted accounting principles.  The applicable rules are complicated, and it was necessary for Counsel to understand those rules and how Ixia ran afoul of them in order to explain in the complaints that Ixia acted with scienter in misapplying those principles.

### 6.    The Risk of Non-Payment Assumed by Counsel

"The risk that further litigation might result in Plaintiffs not recovering at all . . . is a significant factor in the award of fees."  *Omnivision*, 559 F. Supp. 2d at 1046-47; *see In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (discussing policy to reward counsel who take cases on contingency fee basis).

The risks were particularly high here from the outset because there was no governmental complaint to follow.  *See Rodriguez v. West Publ'g Corp.*, 563

F.3d 948, 964 (9th Cir. 2009) (stressing that "there were no government coattails for the class to ride").  And the risks increased as the case progressed, because the case was dismissed twice.

Even assuming that Lead Plaintiffs could successfully overcome another motion to dismiss, significant additional risks would remain in prevailing at trial and on any likely appeal.  *See, e.g., In re Apollo Group Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 61995, at *22 (D. Ariz. Aug. 4, 2008) (district court vacated $280 million jury verdict for plaintiffs and entered judgment for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1443 (11th Cir. 1997) ($81 million verdict for plaintiffs reversed and judgment entered for defendant).

Plaintiffs' Counsel have, to date, received no compensation for their service, despite expending over 2200 hours on this litigation and incurring expenses over $319,000 in litigating this case for the benefit of the Class.  Any fee award and expense reimbursement to Counsel has always been at risk and completely contingent on the results achieved and this Court's exercise of discretion in determining any award.

## 7.    The Reaction of the Class

The Class overwhelmingly favors the Settlement and Lead Counsel's request for fees and expenses, as those amounts were included in the Notice sent to Class Members as well as the Publication Notice and the Stipulation posted on the Settlement website.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) ("The reaction of the class may also be a factor in determining the fee award").  To date, no Class Members have filed objections to the fee request and only two Class Members have requested exclusion from the Class (neither specified the fee request as a reason for doing so).  *See In re Am. Apparel*, *Inc. S'holder Litig.,* 2014 WL 10212865, at *21 (C.D. Cal. July 28, 2014) (lack of objections and single request for exclusion supported fee request of 25% of $4.8 million fund); *Knight*, 2009 WL 248367, at *7 (lack of an

objection or request for exclusion supported requested award of 30% of settlement fund).

### 8.   Comparison with Counsel's Lodestar

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002), noted that "while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." The lodestar is "calculated by multiplying the number of hours . . . reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). However, as explained by one court, "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp.*, 396 F.3d 294, 306 (3d Cir. 2005); *see also Fernandez v. Victoria Secret Stores LLC,* 2008 WL 8950856, at *9 n.35 (C.D. Cal. July 21, 2008) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhausting cataloging and review of counsel's hours"; relying on sworn statements of attorneys regarding hours reasonably expended and customary billing rates); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records") (citation omitted).

Plaintiffs' Counsel billed 2,201.8 hours on this case. Sabella Decl. ¶ 44; Westerman Decl. ¶ 3. At their usual and customary billing rates, this amounts to a lodestar of $1,551,080.50. While courts in contingent fee class actions typically award a multiple of class counsel's lodestar,[4] the lodestar here is

---

[4] *See Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency case "by paying them a premium over their normal hourly rates"); *Sadowska v. Volkswagen Group. of Am., Inc.*, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) (approving negotiated fee representing a 1.37 multiplier); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving 1.82 multiplier where "the demanding nature of this action

*(Cont'd)*

considerably more than the $875,000 award that Plaintiffs' Counsel are seeking. The fact that Counsel are seeking only 56.4% of their total lodestar—what is often referred to as a "negative multiplier" – supports the reasonableness of the request. *See Aichele*, 2015 WL 5286028, at *7; *Chun-Hoon v.McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010).

The billing rates charged by the attorneys, paralegals and others charged by Counsel are the same as they have charged, and courts have approved, in other similar contingent matters.   Sabella Decl. ¶ 44; Westerman Decl. ¶ 3. Furthermore, the time spent here was not devoted to document review or other relatively straightforward tasks, but rather consisted of preparing the complaints, briefing the motions to dismiss, and participating in the mediation and settlement negotiations. *See Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *21 (E.D. Cal. June 11, 2012).

### B.    THE PERCENTAGE REQUESTED IS FAIR AND REASONABLE

Counsel request a fee equal to 25% of the recovery.  As this Court noted in *Aichele*, 2015 WL 5286028, at *5, "the Ninth Circuit has set a benchmark of 25% as a percentage of the fund" awarded in contingent class action litigation.

Furthermore, the fact that this case involves a settlement below $10 million reinforces that a fee of at least 25% is appropriate.  "[I]n cases under $10 million, the awards more frequently will exceed the 25% benchmark, and indeed go above 30%." *Id*.  Thus, the 25% requested here "puts the fee request here at the lower end of settlements under $10 million." *Id*. at *6.

In light of all the difficulties faced by Lead Counsel in this case, and the skill and creativity that Counsel needed to employ in order to obtain a settlement for the Class, it is respectfully submitted that a fee award of 25% is appropriate.

---

precluded Class Counsel from accepting other potentially profitable work."); *Wing*, 114 F.3d at 988-89 (approving 2.0 multiplier in part because of "the quality of the [defendant's] opposition").

## II.    THE REQUEST FOR REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

This Court also has discretion to award costs and expenses.  Fed. R. Civ. P. 23(h).  "[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses – including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016).   Counsel seek $260,000 in unreimbursed costs and expenses in connection with researching and investigating the claims, retaining experts and investigators, postage, travel, engaging a mediator, and other customary expenses, and the costs of notice and claims administration.  *See* Sabella Decl. ¶¶ 49-57; Westerman Decl. ¶ 4.  All of these expenses are reflected on the books and records of Plaintiffs' Counsel and were all reasonably incurred in furtherance of the investigation, prosecution and settlement of this Action.  *Id.*

Lead Counsel could not attempt to plead the claims based on alleged accounting improprieties without retaining an accounting expert, nor attempt to settle the Class's damages without retaining an expert to determine the amount of those damages.  Thus, these expert expenses (in the amount of $105,065.90) were necessarily incurred.

Lead Counsel also retained an investigative firm to identify and contact potential witnesses, including former Ixia employees, who might have knowledge about the underlying claims.   Twenty witnesses were interviewed, and information provided by some of them were incorporated in the complaints. Sabella Decl. ¶¶ 20, 27.  These expenses were reasonably incurred because they "assisted in alleging facts" regarding the Defendants' scienter.  *Am. Apparel*, 2014 WL 10212865, at *29.

The assistance of a qualified mediator is virtually a prerequisite for settling a securities class action.  *See Moore v. IMCO Recycling of CA, Inc.*, 2005 WL 5887180, at *2 (C.D. Cal. Sept. 28, 2005) (recognizing the importance of mediation as a way to avoid trial and that awards of mediation expenses are "reasonably necessary to the conduct of litigation").  The fee charged for the services of experienced mediators Judge Phillips and Mr. Fairbank ($17,512.50) was necessarily incurred in obtaining the Settlement.

Other expenses include the cost of computerized online research ($8,716.77), copies ($4,083.90), and travel ($9,820.97).  These costs were all reasonably incurred, particularly since this is not a case in which class counsel seek reimbursement for "first class airplane tickets, luxury hotel accommodations, and gourmet dinner meetings."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1372 (N.D. Cal. 1996).

Finally, included in the expense figure is $130,000 for the services of the notice and claims administrator, Angeion.  Angeion, whose appointment the Court approved in the Preliminary Approval Order, is one of the foremost firms in the country providing these services in securities cases.  Angeion agreed to cap its charges at $130,000, which figure is less than other firms in the industry would have charged.  Sabella Decl ¶ 53.

## CONCLUSION

For all the foregoing reasons, the Court should grant Lead Plaintiffs' motion and issue an order:  (1) awarding attorneys' fees of $875,000; and (2) granting reimbursement of $260,000 in litigation, notice and settlement administration costs and expenses.

Dated:  June 10, 2016

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By    /s/ James J. Sabella     
485 Lexington Avenue
New York, NY 10017
646-722-8500

*Attorneys for Lead Plaintiffs Oklahoma*
*Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement*
*Retirement System and Lead Counsel*
*for the Class*


**WESTERMAN LAW CORP.**

By    /s/ Jeff S. Westerman     
1875 Century Park East, 22nd Floor
Los Angeles, Ca. 90067
310-698-7450

*Attorneys for Lead Plaintiffs Oklahoma*
*Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement*
*Retirement System*