1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WESTERMAN LAW CORP.**
Jeff S. Westerman (SBN 94559)
1875 Century Park East, 22nd Floor
Los Angeles, Ca. 90067
Fax: (310) 201-9160
jwesterman@jswlegal.com

**GRANT & EISENHOFER P.A.**
James J. Sabella (admitted pro hac vice)
John C. Kairis (admitted pro hac vice)
Diane Zilka (admitted pro hac vice)
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500
Fax: (646) 722-8501
jsabella@gelaw.com
jkairis@gelaw.com
dzilka@gelaw.com

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement Retirement System*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. IXIA, and ERROL GINSBERG,<br><br>                Defendants. | Case No. CV13-08440-DMG(SHx)<br>**DECLARATION OF JAMES J. SABELLA IN SUPPORT OF (A) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (B) MOTION FOR THE AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:            July 29, 2016<br>Time:            10:00 a.m.<br>Courtroom:    7<br>Judge:          Hon. Dolly M. Gee |

1

1   I, JAMES J. SABELLA, declare under penalty of perjury as follows:

2   1.   I am a director of the law firm of Grant & Eisenhofer P.A. ("G&E") and

3   have been practicing law for nearly 40 years. I am a member of the bars of the states of

4   New York and Delaware, the United States Supreme Court, the Second, Fourth, Sixth,

5   Seventh, and Ninth Circuits, the Southern, Eastern and Northern Districts of New York,

6   and the Eastern District of Michigan. I have personal knowledge of the matters set forth

7   herein based on my participation in the prosecution and settlement of the claims asserted

8   on behalf of the Class (defined below) in the Action.[1]

9   2.   G&E is the Court-appointed lead counsel ("Lead Counsel") for the Court-

10  appointed lead plaintiffs Oklahoma Firefighters Pension and Retirement System and

11  Oklahoma Law Enforcement Retirement System ("Lead Plaintiffs") as well as the

12  preliminarily certified Class in this securities class action lawsuit.

13  3.   I respectfully submit this Declaration in support of Lead Plaintiffs' motion,

14  pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final certification of

15  the Settlement Class, final approval of the Settlement and final approval of the proposed

16  plan for allocating the proceeds of the Settlement to eligible Class Members, and for

17  Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation

18  expenses. The Settlement will resolve the claims asserted in the Action on behalf of the

19  class that was preliminarily certified by the Court. The certified class consists of all

20  persons and entities who purchased or otherwise acquired the common stock of Ixia

21  ("Ixia" or the "Company") between February 4, 2011 and April 3, 2013 (the "Class

22  Period"), inclusive and who were damaged thereby.[2] The Court preliminarily approved

23

24  [1] Unless otherwise noted, capitalized terms shall have the meanings ascribed to them in
25  the Stipulation and Agreement of Settlement dated November 11, 2015 ("Stipulation" or
    "Settlement Agreement"), entered into by and among Lead Plaintiffs and Defendants.
26  ECF No. 124-2.

27  [2] The Class excludes (a) Defendants; (b) members of the immediate families of the
    Individual Defendants; (c) any subsidiaries of Defendants; (d) any affiliate, as that term is
28  defined by the federal securities laws, of Ixia or any other Defendant, including the

2                                                                    *(Cont'd)*

1 | the Settlement by its Order entered on February 29, 2016 (the "Preliminary Approval
2 | Order"). ECF No. 130.

3 | **I.      INTRODUCTION**

4 |     4.      Lead Plaintiffs succeeded in obtaining a recovery of $3,500,000 (the
5 | "Settlement Amount") in cash for the Class.  In exchange for this payment, the proposed
6 | Settlement would dismiss with prejudice all claims asserted by Lead Plaintiffs and the
7 | Class against Defendants and end the Action.  The proposed Settlement is an excellent
8 | result for the Class, and is particularly significant in light of the risks posed by further
9 | litigation and trial.

10 |     5.      As discussed further below, Lead Plaintiffs obtained this substantial
11 | recovery for the Class despite the significant risks inherent in complex securities class
12 | actions generally, and the case-specific risks faced in prosecuting the Action against
13 | Defendants.  Twice the Court dismissed Lead Plaintiffs' complaints, finding, *inter alia*,
14 | that the allegations as to scienter were insufficient, and the sufficiency of the Third
15 | Amended Complaint was not yet determined.   Against this backdrop, Lead Plaintiffs
16 | faced the very real prospect that the case would be dismissed with prejudice, and that the
17 | Class would therefore recover nothing.

18 |     6.      At the time the Settlement was agreed to, Lead Counsel thus understood the
19 | strengths and weaknesses of the case. In addition to having the benefit of the Courts' two
20 | lengthy decisions, this understanding was also based on Lead Counsel's (and its agents')

22 | 401(k) plans of Ixia; (e) any person or entity who is a partner, executive officer, director
or controlling person of Ixia (including any of their subsidiaries or affiliates) or any other
23 | Defendant; (f) any entity in which any Defendant has a controlling interest;
24 | (g) Defendants' directors' and officers' liability insurance carriers, and any affiliates or
subsidiaries thereof; and (h) the legal representatives, heirs, successors and assigns of any
25 | such excluded party.  Also excluded from the Class are the persons and/or entities who
26 | request exclusion from the Class within the time period set by the Court in the
Preliminary Approval Order.  "Individual Defendants" are Victor Alston, Atul Bhatnagar,
27 | Thomas B. Ixia and Errol Ginsberg.  "Defendants" includes all the Individual Defendants
28 | and Ixia.

extensive research and investigation, which included, *inter alia*, (i) review and analysis of filings made with the SEC by Ixia during the relevant time period, which reached back a number of years before commencement of the Class Period and including filings by Ixia after the end of the Class Period; (ii) review and analysis of securities analyst reports, press releases, and media reports regarding Ixia and other publications issued by and through the Company; (iii) review and analysis of pleadings in related actions; (iv) interviews with numerous former employees of the Company; (v) research of the applicable law with respect to the claims asserted in the Action and potential defenses thereto; and (vii) consultation with experienced accounting experts and damage experts.

7.    The Settlement was accomplished through hard-fought, arm's-length negotiations facilitated by retired federal judge Hon. Layn Phillips, an accomplished mediator, assisted by Robert Fairbank and Kimberly West, who each have extensive experience resolving complex class actions.  The settlement discussions included a full day in-person mediation session with detailed mediation briefs submitted by attorneys representing each side, followed by extensive follow-up negotiations conducted through Mr. Fairbank.

8.    I also respectfully submit this Declaration in support of Lead Counsel's motion for awards from the Settlement Fund of (1) attorneys' fees of $875,000; and (2) reimbursement of litigation expenses of $260,000, which includes the costs of notice and claims administration, pursuant to Section 21D(a)(4) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4).[3]  As discussed below, the attorneys' fees sought amount to considerably less than the lodestar amounts that Counsel have incurred, and the litigation expenses sought also amount to less than the full amount of expenses incurred.

---

[3] The Notice provides that Counsel will request fees up to 25% of the Settlement amount plus reimbursement of expenses not to exceed $260,000.

1         9.     For the reasons set forth below and in the accompanying memoranda, Lead

2    Plaintiffs and Lead Counsel respectfully submit that (i) the terms of the Settlement are

3    fair, reasonable and adequate in all respects and should be approved by the Court; (ii) the

4    proposed Plan of Allocation is fair and reasonable and should be approved by the Court;

5    (iii) the Court should grant final class certification for settlement purposes; and (iv) Lead

6    Counsel's request for a fee award and request for reimbursement of expenses are

7    supported by the facts and the law and should be granted in all respects.

8         10.    As set forth in the accompanying Joint Declaration of Robert E. Jones and

9    Ginger Sigler, Lead Plaintiffs endorse the Settlement and the request for attorneys' fees

10   and reimbursement of reasonable litigation costs and expenses requested by Plaintiffs'

11   Counsel.

12   **II.**    **THE PROSECUTION OF THE ACTION**

13       **A.**    **LEAD PLAINTIFFS' ALLEGATIONS**

14        11.    This securities fraud class action was brought under section 10(b) of the

15   Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 thereunder,

16   and under section 20(a) of the Exchange Act against the Individual Defendants.

17        12.    The Exchange Act claim alleges that Defendants made materially false and

18   misleading statements relating to Ixia's business and financial condition, and violated

19   generally accepted accounting principles ("GAAP") in reporting and accounting for the

20   Company's revenues and net income, which artificially inflated the price of Ixia's

21   common stock during the Class Period.  The Action centered on alleged misstatements

22   derived from how Ixia classified revenue.  Plaintiffs allege that, to portray Ixia as a

23   "growth" company, Ixia held back the recording of revenue by increasing the amount it

24   booked as deferred revenue. Recording revenue in that fashion gave the false appearance

25   that the Company had attractive growth prospects, but it violated GAAP which required

26   Ixia to book all the revenue in the appropriate quarters.

27        13.    In April 2013 Ixia restated its financial statements to reduce deferred

28   revenue.  Ixia's stock price dropped nearly 10% upon the announcement of the

restatement. Ixia thereafter announced that its outside auditing firm declined to stand for re-appointment for the year fiscal year ended December 31, 2013, and Victor Alston resigned as Ixia's President and CEO and as a member of its board of directors.

14. The material misstatements and omissions by Defendants are alleged to have caused Ixia's common stock to trade at distorted prices during the Class Period. Lead Plaintiffs alleged that purchasers of Ixia stock were damaged when the truth began to be disclosed in April 2013.

## B. LEAD COUNSEL'S PRE-FILING INVESTIGATION AND PREPARATION OF THE AMENDED COMPLAINT

15. In November 2013, a securities class action complaint was filed against Defendants.

16. After proceedings with respect to appointment of a lead plaintiff pursuant to the PSLRA, by Order dated March 24, 2014, the Court appointed Oklahoma Firefighters Pension and Retirement System and Oklahoma Law Enforcement Retirement System as Lead Plaintiffs and appointed my law firm as Lead Counsel for the plaintiffs in the consolidated action. ECF No. 40.

17. On June 11, 2014, Lead Plaintiffs filed a 58-page Amended Class Action Complaint For Violation Of Securities Laws ("AC") against Defendants. ECF No. 61.

18. Prior to filing the Complaint, Lead Counsel developed a plan to coordinate a thorough investigation of Lead Plaintiffs' claims, preserve relevant discovery, and access all relevant information from public and non-public sources. Lead Counsel's coordinated pre-filing investigation included, among other things, a detailed review and analysis of (i) public filings with the SEC by Ixia; (ii) research reports by securities and financial analysts; (iii) transcripts of investor conference calls; (iv) publicly available presentations by Ixia; (v) press releases and media reports; and (vi) economic analyses of securities price movements and pricing data.

19. In addition, prior to the filing of the AC, Lead Counsel retained and consulted with accounting experts to address the substantive claims particularly with

respect to alleged GAAP violations, and securities fraud damages experts to assist in assessing the damages suffered by the Class and developing the claims that would ultimately be asserted.

20.     Lead Counsel also retained the services of an investigation firm to seek out witnesses with information relevant to the allegations in the Complaint. Lead Plaintiffs included allegations in the AC based on information provided by two of those witnesses.

**C.     DEFENDANTS' MOTIONS TO DISMISS LEAD PLAINTIFFS' AMENDED AND SECOND AMENDED COMPLAINTS**

21.     On July 18, 2014, Defendants filed three motions to dismiss the AC and a request for judicial notice.  The motions to dismiss were supported by 54 pages of briefing, and 32 exhibits totaling nearly 1300 pages. ECF Nos. 81-85.

22.     Defendants argued, among other things, that the Lead Plaintiffs had not alleged facts giving rise to a strong inference of scienter, that certain alleged misstatements could not be attributable to certain Individual Defendants, and that Lead Plaintiffs have not sufficiently alleged control person liability under section 20 of the Exchange Act.

23.     On August 18, 2014, Lead Plaintiffs filed a request for judicial notice, my Declaration with nearly 90 pages of exhibits and a 54-page omnibus opposition to Defendants' motions to dismiss which argued, among other things, that Lead Plaintiffs had sufficiently pleaded scienter. ECF No. 89.

24.     On September 9, 2014, Defendants filed their reply briefs in further support of their motions to dismiss, a supplemental declaration and supplemental request for judicial notice. ECF Nos. 90-95.

25.     On October 6, 2014, the Court issued its Order dismissing the AC and granting Lead Plaintiffs leave to replead. ECF No. 98.

26.     Drafting the SAC required Lead Counsel to conduct further legal research as well as analysis of IXIA's public filings, research reports by securities and financial analysts, transcripts of investor conference calls, publicly available presentations by Ixia

7

and press releases and media reports. To prepare the SAC, Lead Counsel also consulted with their accounting experts, and their previously retained private investigating firm conducted an interview of a potential additional confidential witness.

27. On November 5, 2014, Lead Plaintiffs filed the SAC which included amended allegations regarding Defendants' scienter, and new allegations based on information from the additional confidential witness interviewed during the investigation process. ECF No. 99.

28. On January 6, 2015, Defendants filed several motions to dismiss the SAC and a request for judicial notice. The motions consisted of 56 pages of briefs, a request for judicial notice and a declaration with 39 exhibits totaling over 1920 pages. ECF Nos. 104-108.

29. Defendants argued that the Lead Plaintiffs had not alleged facts giving rise to a strong inference of scienter and that Lead Plaintiffs have not sufficiently alleged control person liability under section 20 of the Exchange Act.

30. On February 10, 2015, Lead Plaintiffs filed their 46-page omnibus opposition to Defendants' motions to dismiss the SAC and their opposition to Defendants' request for judicial notice. ECF Nos. 109, 110.

31. On March 3, 2015, Defendants filed their reply submissions in support of their several motions to dismiss, including 52 pages of briefing. ECF Nos. 111-114.

32. On April 14, 2015, the Court issued an 82-page Order granting the motions and again granting Lead Plaintiffs leave to replead. ECF. No. 116.

33. As Lead Plaintiffs' Third Amended Complaint ("TAC") was due to be filed on May 14, 2015, Lead Counsel immediately commenced drafting it. Lead Counsel conducted factual investigation to address the perceived deficiencies in the SAC's pleadings found by the Court. Lead Counsel analyzed public filings with the SEC by Ixia, research reports by securities and financial analysts, transcripts of investor conference calls, publicly available presentations by Ixia and press releases and media

1  reports.  Lead Counsel's consulting accounting experts provided additional information,
2  and Lead Counsel's private investigation firm interviewed several additional individuals.

3      34.    In the midst of Lead Counsel's drafting of the TAC, the parties raised the
4  subject of mediating a possible settlement of the litigation.

5      35.    On April 24, 2015, the Court entered an Order staying the case pending the
6  outcome of mediation.

7      **D.    THE SETTLEMENT NEGOTIATIONS**

8      36.    The proposed Settlement was reached only after a comprehensive mediation
9  process.  As noted above, after the Court granted Defendants' motions to dismiss the
10  SAC, the parties jointly agreed to mediate before Judge Phillips and Mr. Fairbank.

11      37.    On June 25, 2015, the parties submitted detailed mediation briefs at the
12  request of the mediators.  After receiving and reviewing the parties' submissions, the
13  mediators conducted telephonic conferences with each side separately in order to gain
14  clarification as to certain of their points and to probe perceived strengths and weaknesses
15  in their positions, including factor affecting settlement, key merits issues and damages.
16  Thereafter, the mediators sent each side an extensive list of questions zeroing in on
17  specific aspects of the case, to be discussed with the parties at the mediation session.

18      38.    I attended a formal mediation session on July 23, 2015 run by Judge Phillips
19  and Mr. Fairbank.  Ixia's counsel, the Individual Defendants' counsel, our local counsel,
20  Jeff S. Westerman, and counsel for Ixia's primary insurance carrier also participated.  At
21  the mediation both sides made detailed presentations regarding the strengths and
22  weaknesses of their cases.

23      39.    The parties were not able to reach final resolution during that session.
24  However, following an additional three weeks of arm's-length negotiations conducted by
25  Mr. Fairbank, on August 14, 2015 the parties reached an agreement-in-principle to settle
26  the Action for $3.5 million, subject to the negotiation of the terms of a stipulation of
27  settlement and approval by the Court.  Lead Plaintiffs fully endorsed the settlement
28  reached. *See* accompanying Joint Declaration of Robert E. Jones and Ginger Sigler.

40.     Thereafter, we engaged in extensive discussions with defense counsel concerning the precise provisions of the Stipulation, exchanging numerous drafts. This lengthy and sometimes difficult process did not conclude until the Stipulation was executed on or about November 11, 2015.

## III.   THE REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

41.     In addition to seeking final approval of the Settlement and Plan of Allocation and final certification of the Class, Lead Plaintiffs have moved for an award of attorneys' fees and reimbursement of expenses from the Settlement Fund.

42.     As part of their respective processes in selecting counsel, prior to moving for appointment as Lead Plaintiff, Oklahoma Firefighters Pension and Retirement System and Oklahoma Law Enforcement Retirement System negotiated and entered into retainers with our firm. The retainer agreements provide that, while the ultimate fee is to be set by the Court, Lead Counsel would request, and Lead Plaintiffs would support, a fee in the amount of 25% of the recovery for the Class.

43.     As provided for in the retainer agreements, Lead Counsel now seeks a fee award of $875,000 (25% of the $3.5 million Settlement Fund), as well as reimbursement for $260,000 in reasonable and necessary litigation expenses, which includes the costs for class notice and claims administration. As reflected in the Joint Declaration of Robert E. Jones and Ginger Sigler, Lead Plaintiffs—both sophisticated institutional investors appointed pursuant to the PSLRA to represent the interests of all class members—have reviewed and consent to the request for attorney's fees at 25% of the Settlement Fund and to the reimbursement of expenses.

44.     A lodestar cross-check confirms the reasonableness of the fee application. From the commencement of this Action through May 31, 2016, G&E attorneys and paralegals dedicated 2,047.30 hours to the prosecution of the Action (exclusive of time spent on this application for attorneys' fees and expenses). G&E's total lodestar amount for attorney/paralegal time based on the firm's current rates is $1,442,311.50. The hourly

rates shown below are the usual and customary rates charged for each individual in our cases. A breakdown of the lodestar prepared from contemporaneous daily time records regularly prepared and maintained by counsel, which are available at the request of the Court, is as follows:

| Timekeeper | Position[4] | Total Hours through May 31, 2016 | Rate | Total through May 31, 2016 |
|---|---|---|---|---|
| J. Sabella | D | 612.60 | 925 | 566,655.00 |
| J. Kairis | D | 446.80 | 750 | 335,100.00 |
| D. Zilka | C | 267.10 | 695 | 185,634.50 |
| J. Victor | A | .80 | 410 | 328.00 |
| D. Haendler | A | 9.90 | 525 | 5,197.50 |
| C. Moyna | A | 466.90 | 625 | 291,812.50 |
| R. Musarra | A | 4.80 | 450 | 2,160.00 |
| E. Lilly | SA | 44.00 | 375 | 16,500.00 |
| T. Saviano | L | 10.30 | 200 | 2,060.00 |
| V. Beal | L | 7.60 | 200 | 1,520.00 |
| C. Aldinger | L | 78.20 | 200 | 15,640.00 |
| T. Bibby | L | 3.60 | 200 | 720.00 |
| L. Silvestro | L | 92.70 | 200 | 18,540.00 |
| T. Schuster | L | .40 | 200 | 80.00 |
| K. Adams | L | .50 | 200 | 100.00 |
| C. Nevers | L | 1.10 | 240 | 264.00 |
| **TOTAL** | | **2,047.30** | | **$1,442,311.50** |

45.     Also submitted herewith is the Declaration of Jeff S. Westerman on behalf of Westerman Law Corp., summarizing the lodestar and expenses of Mr. Westerman's law firm.

46.     In total, Counsel has expended 2201.8 hours in the investigation, prosecution and resolution of the Action against Defendants, for a lodestar value of $1,551,080.50 through May 31, 2016. A fee award of 25% of the Settlement Fund, or $875,000, is

[4] Director ("D"), Counsel ("C"), Associate ("A"), Staff Attorney ("SA"), and Legal Assistant ("L").

significantly less than lodestar.  Said differently, it yields a very substantial ***negative multiplier*** on the lodestar.[5]

47.     Lead Counsel also seek reimbursement from the Settlement Fund in the total aggregate amount of $260,000.00 for litigation expenses (which includes the costs of class notice and claims administration) reasonably incurred by Lead Counsel and Westerman Law Corp. in connection with commencing, prosecuting and resolving the claims asserted in the Action against Defendants.  This is less than the full amount of litigation expenses incurred.

48.     From the beginning of the case, Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover any of their out-of-pocket expenses until the Action was successfully resolved.  Thus, counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

49.     During the course of this Action, G&E incurred $185,119.40 in litigation expenses necessary to the prosecution of the Action through May 31, 2016.  These expenses are broken down as follows:

| Disbursements | |
|---|---|
| Mediation Services | 17,512.50 |
| Experts | 105,065.90 |
| Filing Fee | 1076.81 |
| Fax | .50 |
| Travel | 7,327.49 |
| Duplication Services | 4,083.90 |
| Investigators | 39,626.39 |
| Postage & Delivery | 27.64 |
| Service Fees | 1,681.00 |
| Telephone | .50 |
| Case-Related Research | 8,716.77 |
| **TOTAL** | **$185,119.40** |

---

[5] Furthermore, neither my firm nor Westerman Law Corp. will seek payment for any time spent after May 31, 2016 reviewing and paying Class Members' claims or otherwise supervising the administration of the Settlement.

50.     G&E's expenses pertaining to this case are reflected in the computerized books and records of the firm.  These records are prepared from invoices, bills, expense vouchers and check records, kept in the normal course of business.

51.     As set forth in the Westerman Declaration, Westerman Law Corp. incurred $3,887.78 in unreimbursed litigation expenses.

52.     In addition, Angeion agreed to provide all notice and claims administration services for $130,000.  This is less than other firms in the industry would have charged.

53.     Thus, the total expenses, including for Angeion, are $319,007.18, of which Lead Counsel seeks reimbursement of $260,000.00.

54.     Of the total amount of expenses, $144,692.29 represents the costs for experts, consultants and private investigators.  These experts, consultants and investigators were essential to the overall prosecution of the Action.

55.     First, Lead Counsel retained the firm of Marks Paneth LLP as a consulting expert to, *inter alia*, review Ixia's SEC filings, provide Lead Counsel with guidance on the applicable U.S. GAAP rules and standards, help Lead Counsel research and draft the AC, the SAC, and the TAC, and to provide advice and guidance in preparation for the mediation.  Given the complexity of the accounting issues involved, Lead Counsel could not reasonably have drafted the complaints, and adequately prepared for mediation, without such expert assistance.  Marks Paneth LLP billed Lead Counsel $67,000 for these services.

56.     Second, Lead Counsel retained the firm of Forensic Economics, Inc. to conduct an event study isolating the impact of the alleged corrective disclosures on the price of Ixia common stock.  Forensic Economics, Inc. also assisted Lead Counsel in developing the Plan of Allocation.  Forensic Economics, Inc. charged $38,065.90 for these services.

57.     Finally, in order to locate and interview prospective witnesses, Lead Counsel retained the firm of Gryphon Strategies ("Gryphon") for investigation services.  Gryphon located and interviewed 20 former Ixia employees who were thought to have potentially

relevant information, including the three confidential witnesses discussed in the Third Amended Complaint. Gryphon also spent discussing strategy with Lead Counsel, preparing for interviews, identifying and tracking down witnesses, as part of their work. Lead Counsel has paid Gryphon $39,626.39 for these services.

## IV.   CONCLUSION

58.   For all the reasons set forth above, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable and adequate. Lead Counsel further submits that they should be awarded a fee of $875,000 in accordance with the substantial work undertaken, the extraordinary risks involved in the action, and the result achieved. The request for reimbursement of expenses in the amount of $260,000 should also be approved.[6]

I declare, under penalty of perjury, that the foregoing facts are true and correct to the best of my knowledge.

Executed on June 9, 2016 in New York, New York.

By: _____
JAMES J. SABELLA

_____

[6] The deadline for Class Members to file objections to the Settlement, the Plan of Allocation and/or the Attorneys' Fees and Expenses Application is June 29, 2016. To date, only two investors have opted out of the Class and no Class Member has filed an objection to the Settlement or to the request for attorneys' fees and expenses.

14