**WESTERMAN LAW CORP.**
Jeff S. Westerman (SBN 94559)
1875 Century Park East, 22nd Floor
Los Angeles, California 90067
Telephone: (310) 698-7450
Fax: (310) 201-9160
jwesterman@jswlegal.com

**GRANT & EISENHOFER P.A.**
James J. Sabella (admitted pro hac vice)
John C. Kairis (admitted pro hac vice)
485 Lexington Avenue
New York, New York 10017
Telephone: (646) 722-8500
Fax: (646) 722-8501
jsabella@gelaw.com
jkairis@gelaw.com

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension & Retirement Fund*
*and Oklahoma Law Enforcement Retirement System*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION & RETIREMENT SYSTEM and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXIA, VICTOR ALSTON, ATUL BHATNAGAR, THOMAS B. MILLER, and ERROL GINSBERG,<br><br>Defendants. | Case No. CV13-08440-DMG<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL TO DISTRIBUTE NET SETTLEMENT FUND, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: Feb. 10, 2017<br>Time: 9:30 a.m.<br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 10, 2017 at 9:30 a.m., in Courtroom 8C of the United States District Court for the Central District of California, U.S. Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, the Honorable Dolly M. Gee presiding, Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System ("Lead Plaintiffs"), on behalf of the Class[1] and through lead counsel for the Class, Grant & Eisenhofer P.A. ("Lead Counsel"), hereby move the Court for entry of the accompanying proposed Order, whereby the Court would, *inter alia*:

1. Accept the administrative determinations by Angeion Group (the "Claims Administrator") concerning the acceptance and rejection of claims submitted by putative Class members in response to the notice of the settlement of this securities class action, including rejection of certain claims listed in Exhibit C to the Declaration of Brian Manigault in Support of Plaintiffs' Motion To Approve Distribution of Net Settlement Fund (the "Manigault Declaration");

2. Authorize the Claims Administrator to deem timely certain claims filed after the claims submission deadline, as listed in Exhibit C to the Manigault Declaration, and to deem the claimants who submitted these claims as Authorized Claimants;

3. bar any claims submitted after the claims submission deadline, other than those listed on Exhibit C to the Manigault Declaration, from receiving any distributions from the Net Settlement Fund;

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Notice Of Proposed Securities Class Action Settlement, Application For Attorneys' Fees And Expenses, And Settlement Fairness Hearing.

4. accept the Claims Administrator's calculations of each Authorized Claimant's "Recognized Claim" in accordance with the Plan of Allocation and which plan was approved by the Court on July 29, 2016;

5. authorize distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based on the Authorized Claimants' Recognized Claims; and

6. permit the destruction of Proof of Claim forms and related documents after a reasonable period of time.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Manigault Declaration and the exhibits thereto, and a proposed Order, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at a hearing of this motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 28, 2016.  The Stipulation and Agreement of Settlement provides: "The Defendants shall not be permitted to review, contest or object to any Claim Form or any decision of the Settlement Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member" (¶ 22).

Dated:  January 6, 2017

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By ____/s/ James J. Sabella____
485 Lexington Avenue
New York, NY 10017
646-722-8500

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension &*
*Retirement Fund and Oklahoma Law*
*Enforcement Retirement System and*
*Lead Counsel for the Class*

**WESTERMAN LAW CORP.**

By ____/s/ Jeff S. Westerman____
1875 Century Park East, 22nd Floor
Los Angeles, California 90067
310 698-7450

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension &*
*Retirement Fund and Oklahoma Law*
*Enforcement Retirement System*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

      A.    THE SETTLEMENT ............................................................. 2

      B.    DISTRIBUTION, REVIEW AND ANALYSIS OF CLAIM FORMS ............... 4

ARGUMENT ..................................................................................................... 6

I.    THE COURT SHOULD AUTHORIZE INCLUSION OF CLASS MEMBERS WHO SUBMITTED LATE CLAIMS IN THE SETTLEMENT DISTRIBUTION ................................................................ 6

II.    THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS AND AUTHORIZE DISTRIBUTION OF THE NET SETTLEMENT FUND ................................................................................................... 8

III.    THE COURT SHOULD AUTHORIZE THE EVENTUAL DESTRUCTION OF CLAIM FORMS AND RELATED DOCUMENTS ................................................................................ 9

CONCLUSION ................................................................................................. 9

i

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL TO DISTRIBUTE NET SETTLEMENT
FUND, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT / Case No.CV13-08440-DMG(SHx)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re American Tower Corp. Sec. Litig.*,

    648 F. Supp. 2d 223 (D. Mass. 2009).................................................................7

*In re Gypsum Antitrust Cases*,

    565 F.2d 1123 (9th Cir. 1977)............................................................................7

*Lemus v. H & R Block Enterprises, LLC*,

    C 09-03179 SI, 2013 WL 3831866 (N. D. Cal. July 23, 2013),

    *aff'd sub nom. Lemus v. Madar*, 594 Fed. Appx. 419 (9th Cir. 2015)...............6

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,

    246 F.3d 315 (3d Cir. 2001) .........................................................................6, 7

*Zients v. LaMorte*,

    459 F.2d 628 (2d Cir. 1972) ..............................................................................7

**STATUTES AND RULES**

Fed. R. Civ. P. 23...................................................................................................6

**OTHER AUTHORITIES**

FED. JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION, THIRD § 30.47

    (1995).................................................................................................................7

ii

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL TO DISTRIBUTE NET SETTLEMENT
FUND, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT / Case No.CV13-08440-DMG(SHx)

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Lead Plaintiffs Oklahoma Firefighters Pension & Retirement System and Oklahoma Law Enforcement Retirement System ("Lead Plaintiffs"), on behalf of the Class[2] and through lead counsel for the Class, Grant & Eisenhofer P.A. ("Lead Counsel"), respectfully submit this Memorandum of Points and Authorities in support of their application for an Order, *inter alia*:

- accepting the administrative determinations by Angeion Group (the "Claims Administrator") concerning the acceptance and rejection of claims submitted by putative Class members in response to the notice of the settlement ("Settlement") of this securities class action, including rejection of the claims listed on Exhibit C to the Declaration of Brian Manigault in Support of Lead Plaintiffs' Motion To Approve Distribution of Net Settlement Fund, dated December 9, 2016 (the "Manigault Declaration" or "Manigault Dec.");

- authorizing the Claims Administrator to deem timely certain claims filed after the claims submission deadline, as identified on Exhibit C to the Manigault Declaration, and to deem the claimants who submitted these claims as Authorized Claimants;

- barring any claims submitted after the claims submission deadline, other than those listed on Exhibit C to the Manigault Declaration, from receiving any distributions from the Net Settlement Fund;

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Notice Of Proposed Securities Class Action Settlement, Application For Attorneys' Fees And Expenses, And Settlement Fairness Hearing, a copy of which is attached as Exhibit 1 for the Court's convenience.  As set forth in the Notice, at page 8, the "Class" is defined as "all persons or entities who purchased or otherwise acquired Ixia securities between February 4, 2011 and April 3, 2013 inclusive."

- accepting the Claims Administrator's calculations of Recognized Loss for Authorized Claimants in accordance with the Plan of Allocation that was approved by the Court on July 29, 2016;[3]

- authorizing distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based on the Authorized Claimants' Recognized Losses;

- For any funds remaining one year from the initial distribution of the Net Settlement Fund, after payment of claims administration costs as ordered herein, and after reasonable and diligent efforts by the Claims Administrator to contact claimants who have not cashed their payments, authorizing the Claims Administrator to consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund to Class Members who cashed their initial distribution check is cost effective, after taking into consideration payment of any additional costs and expenses that would be associated with a redistribution, or if the balance will be distributed *cy pres*; and

- authorizing the destruction of Proof of Claim forms and related documents within a reasonable period of time.

## STATEMENT OF FACTS

### A.   THE SETTLEMENT

On November 11, 2015, Lead Plaintiffs, on behalf of the Class, and Defendants Ixia, Victor Alston, Atul Bhatnagar, Thomas B. Miller and Errol Ginsberg ("Defendants") entered into a Settlement, as memorialized in the Settlement Agreement.   Under the Settlement, the Class released all claims

---

[3] The Plan of Allocation is posted in full on the website designated for the Action, http://www.ixiasecuritiessettlement.com.

against Defendants.   In return, Defendants' primary insurance carrier paid $3,500,000 to the Settlement Fund for the benefit of the Class.[4]

By order dated February 29, 2016 (Dkt. No. 130), the Court preliminarily approved the Settlement and instructed that notice of the Settlement be distributed to the Class.  Pursuant to the notice plan approved by the Court in the Preliminary Approval Order and set forth in the Settlement Agreement, the Claims Administrator undertook all reasonable measures to identify the members of the Class and their addresses.  The Claims Administrator then mailed the Court-approved Notice to members of the Class, posted the Notice on the website established by the Claims Administrator, and caused the Publication Notice to be published in PR Newswire and *Investor's Business Daily*.   The Claims Administrator also established a telephonic helpline dedicated to assisting Class members.  Manigault Decl. at ¶6.  *See also* Declaration of Brian Manigault Re: Notice To The Settlement Class And Report On Receipt Of Exclusion Requests And Objections, dated June 9, 2016 [Dkt No. 141], at ¶11.   The website dedicated to the Settlement included all pertinent documents.  Through December 7, 2016, the website was visited at least 419 times.  Manigault Dec. ¶7.

On July 29, 2016, after a hearing, this Court entered an Order and Final Judgment granting final approval of the Settlement, including the Plan of Allocation which provides for the allocation and distribution of the Net Settlement Fund (*i.e.*, the $3.5 million settlement payment, less fees and costs) to

---

[4] Excluded from the Class are (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) any subsidiaries of Defendants; (d) any affiliate, as that term is defined by the federal securities laws, of Ixia or any other Defendant, including the 401(k) plans of Ixia; (e) any person or entity who is a partner, executive officer, director or controlling person of Ixia (including any of their subsidiaries or affiliates) or any other Defendant; (f) any entity in which any Defendant has a controlling interest; (g) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (h) the legal representative, heirs, successors and assigns of any such excluded party.

Class members who submit valid claims.  Dkt. No. 145.  As of November 30, 2016, the Settlement Fund is $2,345,736.56, including accrued interest.

### B.   DISTRIBUTION, REVIEW AND ANALYSIS OF CLAIM FORMS

Under the Preliminary Approval Order, the Court appointed the Claims Administrator to administer the Settlement.  Through December 7, 2016, the Claims Administrator received and processed a total of 7,160 Claims.  Manigault Dec. at ¶10.

As demonstrated by the Manigault Declaration, the Claims Administrator carefully reviewed all submitted Proofs of Claim.  *Id*. at ¶¶11-12.  The claims administration procedures were subject to a thorough quality assurance review that utilized procedures designed to ensure the correctness and completeness of the claims and of the Claim's administrator's documentation supporting its recommendations regarding distribution of the Net Settlement Fund.  *Id.* at ¶19.

During a lengthy process designed to give as many claimants as possible the opportunity to cure any deficiencies in their claims, the Claims Administrator sent 184 written Deficient Claim or Denied Claim Notices ("Ineligible Notice") to certain claimants who filed paper claims and whose claims were denied or were deficient for the reasons noted.  *Id*. ¶13.  In addition, the Claims Administrator notified electronic filers of Claims of any deficiency or rejection of their Claims, by means of a Transaction Report.  *Id.* at ¶¶15-16.  For claims that were deficient, the Deficient Claim Notice notified the claimant of the deficiency and advised the claimant how to cure the deficiency and the period of time within which to do so.  *See id.*, Exs. A and B.  Where an Ineligible Notice or Transaction Report was sent, each claimant was notified that unless the deficiency was corrected within a twenty (20) day time period (as required pursuant to the Settlement Agreement), the claim would be rejected if the claimant had not supplied the required documentation or information or if there was any other deficiency.  *Id.* at ¶17.

Where claimants failed to cure deficiencies after notice, or where the claims otherwise showed that the claimants were ineligible to receive a share of the Net Settlement Fund (for example, because they made no purchases of Ixia securities during the Class Period), the Ineligible Notice and the Transaction Report notified the claimant in writing of the rejection of their claims. *Id.* ¶16. The Claims Administrator informed the claimants of their right to request this Court's review of the rejection of their claims, and of the means by which to do so. *Id.* at ¶17. The claims that the Claims Administrator has rejected as ineligible are identified in Exhibit C to the Manigault Declaration. The Claims Administrator received no requests for Court review of a rejected claim. *Id.*

For claimants who established their eligibility to share in the Net Settlement Fund – *i.e.*, "Authorized Claimants" – the Claims Administrator calculated their Recognized Claim amounts in accordance with the formulas set forth in the Court-approved Plan of Allocation. *Id.* at ¶20. The Claims Administrator has performed these calculations for claimants who submitted eligible claims by the June 23, 2016 claims deadline, as well as for the 122 claimants who submitted late but otherwise eligible claims. Exhibit C to the Manigault Declaration lists the claimants who submitted timely and eligible claims, and the claimants who submitted late but otherwise eligible claims, along with the amounts of these claimants' respective Recognized Claims. The total Recognized Claims submitted by eligible claimants is $24,816,158.90 (consisting of $24,061,889.02 in timely submitted claims and $754,269.91 in late but otherwise eligible claims). *See id.* at ¶¶21-22, Ex. C.

Upon Court approval of the Claims Administrator's determinations regarding the acceptance and rejection of claims, the Claims Administrator will aggregate all the Recognized Loss amounts, calculate each Authorized Claimant's *pro rata* share of the total (*i.e.*, the percentage of the total Recognized Loss that is represented by the Authorized Claimant's specific Recognized

Claim), and multiply those percentages by the Net Settlement Fund to determine the amount payable to each Authorized Claimant. *Id*. at ¶29.  In accordance with the Plan of Allocation, Authorized Claimants whose *pro rata* shares would result in a payable amount less than $10.00 will not receive a distribution from the Net Settlement Fund. *Id.*

## **ARGUMENT**

**I.   THE COURT SHOULD AUTHORIZE INCLUSION OF CLASS MEMBERS WHO SUBMITTED LATE CLAIMS IN THE SETTLEMENT DISTRIBUTION**

As set forth in the Court-approved Notice, the deadline for submission of Proof of Claim forms was June 23, 2016.  A total of 594 claims were received after that date, 122 of which are otherwise valid. *Id*. at ¶22.  Although they were submitted after the deadline, these claims were submitted while the claims administration process was ongoing and did not result in any delay of the distribution of the Settlement proceeds. *See id.* at ¶23.  Furthermore, many of the claimants who submitted late claims explained that their brokers did not forward the notice and claim form to them until after the deadline for submission of claims had passed, and hence the late submission was not the fault of the claimant.  Accordingly, in the interests of providing a recovery to as many Class members as possible, Lead Plaintiff respectfully submits that claimants who submitted late but otherwise eligible claims (the "Late Claimants"), as identified on Exhibit C to the Manigault Declaration, should be treated as Authorized Claimants and should be included in the distribution of the Net Settlement Fund.

This Court has broad and inherent equitable powers to permit distributions to claimants whose claims were submitted late. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("Settlement administration in a complex class action often requires courts to use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class."); *Lemus v. H & R Block Enterprises, LLC*,

C 09-03179 SI, 2013 WL 3831866, at *2 (N. D. Cal. July 23, 2013) ("A district court has discretion to allow late claims to a settlement fund."), *aff'd sub nom. Lemus v. Madar*, 594 Fed. Appx. 419 (9th Cir. 2015) (unpublished); *In re American Tower Corp. Sec. Litig.*, 648 F. Supp. 2d 223, 225 (D. Mass. 2009) (directing that late but otherwise eligible claimants be treated as authorized claimants when distributing the settlement fund). "A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d at 321 "[W]here, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, [late claimants] should be permitted to participate in the fund." *Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972); FED. JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION THIRD § 30.47 (1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement funds occurs.") (quoted in *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d at 321).

While Lead Plaintiffs believe that the Late Claimants' claims should be accepted, it is also necessary to implement a final cut-off date after which no more claims may be accepted, so that an orderly distribution can be made and the Class will not be prejudiced by delay.  Accordingly, Lead Plaintiffs request that the Court order that any late claims *not* identified on Exhibit C to the Manigault Declaration shall not be entitled to share in any distributions of the Net Settlement Fund.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, a cutoff date is essential and at some point the matter must be terminated.") (internal citations and quotations omitted).

## II. THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS AND AUTHORIZE DISTRIBUTION OF THE NET SETTLEMENT FUND

Lead Plaintiffs propose to distribute the Net Settlement Fund to Authorized Claimants at this time, after payment of the remaining balance of the Claims Administrator's fees and expenses. Lead Plaintiffs submit that the determinations of the Claims Administrator, as explained in the Manigault Declaration and the exhibits thereto, are reasonable, appropriate and in accordance with the Plan of Allocation, and should be approved by the Court.

As noted above, the Claims Administrator has provided notice to those claimants whose claims were rejected, and has informed those claimants of their right to seek judicial review of the Claims Administrator's determination. The Claims Administrator notified all of the rejected Claimants of the disposition of their claims with an Ineligible Notice for paper claims or a Transaction Report for claims filed electronically. The claims Administrator received no requests for Court review of a rejected claim. Manigault Dec. ¶17.

Accordingly, it is respectfully submitted that the Court should adopt the Claims Administrator's determinations and (i) authorize distribution of the Net Settlement Fund to the Authorized Claimants on a *pro rata* basis (as provided in the Plan of Allocation), based on the Recognized Loss amounts set forth in Exhibit C to the Manigault Declaration, and (ii) approve the rejection and non-payment of the ineligible claims listed in Exhibit C to the Manigault Declaration.

For any funds remaining one year from the initial distribution of the Net Settlement Fund, after payment of claims administration costs as requested herein and after the Claims Administrator has made reasonable and diligent efforts to contact claimants who have not cashed their payments, the Claims Administrator will consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund to Class Members who cashed their initial distribution check is cost effective, after taking into consideration payment of any additional

8

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL TO DISTRIBUTE NET SETTLEMENT FUND, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT / Case No.CV13-08440-DMG(SHx)

costs and expenses that would be associated with a redistribution, or if the balance will be distributed *cy pres*.

### III.   THE COURT SHOULD AUTHORIZE THE EVENTUAL DESTRUCTION OF CLAIM FORMS AND RELATED DOCUMENTS

Lead Plaintiffs further request that the Court permit the Claims Administrator to destroy any paper copies of Proof of Claim forms and related paper documentation one year after the final distribution of the Net Settlement Fund, and any electronic copies of those documents three years after the final distribution of the Net Settlement Fund.

## CONCLUSION

Based on the foregoing and the entire record herein, Lead Plaintiffs respectfully request that this Court grant Lead Plaintiffs' Motion for Approval to Distribute Net Settlement Fund and enter the proposed order submitted herewith.

LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL TO DISTRIBUTE NET SETTLEMENT FUND, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT / Case No.CV13-08440-DMG(SHx)

Dated:  January 6, 2017

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

By ___/s/ James J. Sabella___
485 Lexington Avenue
New York, NY 10017
646-722-8500

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension &*
*Retirement Fund and Oklahoma Law*
*Enforcement Retirement System and*
*Lead Counsel for the Class*

**WESTERMAN LAW CORP.**

By ___/s/ Jeff S. Westerman___
1875 Century Park East, 22nd Floor
Los Angeles, California 90067
310 698-7450

*Attorneys for Lead Plaintiffs*
*Oklahoma Firefighters Pension &*
*Retirement Fund and Oklahoma Law*
*Enforcement Retirement System*