1

2

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3  OKLAHOMA FIREFIGHTERS | ) |
| 4  PENSION & RETIREMENT | )    Case No. CV13-08440-DMG(SHx) |
| SYSTEM and OKLAHOMA LAW | ) |
| 5  ENFORCEMENT RETIREMENT | )    **DECLARATION OF BRIAN** |
| 6  SYSTEM, Individually and on | )    **MANIGAULT IN SUPPORT** |
| Behalf of All Others Similarly | )    **OF LEAD PLAINTIFF'S** |
| 7  Situated, | )    **MOTION TO DISTRIBUTE** |
| | )    **NET SETTLEMENT FUND** |
| 8            Plaintiffs, | ) |
| 9            v. | )    Date:        Feb. 10, 2017 |
| 10  IXIA, VICTOR ALSTON, ATUL | )    Time:        9:30 a.m. |
| BHATNAGAR, THOMAS B. | )    Courtroom:   8C |
| 11  MILLER, and ERROL GINSBERG, | )    Judge:       Hon. Dolly M. Gee |
| 12            Defendants. | ) |

13

14        I, BRIAN MANIGAULT, declare:

15        1.      I am an Associate Project Manager for Angeion Group ("Angeion"),

16  located at 1801 Market Street, Suite 660, Philadelphia, PA 19103. I have overall

17  responsibility for all aspects of the noticing and claims administration for

18  securities class action settlements.

19        2.      I respectfully submit this declaration in order to provide the Court

20  and the parties to the above-captioned litigation (the "Action") with information

21  regarding the processing of Proof of Claim and Release Forms and the

22  calculation of Recognized Losses in the Action. I am over 21 years of age and

23  am not a party to this Action. I have personal knowledge of the facts set forth

24  herein and, if called as a witness, could and would testify competently thereto.

25        3.      Unless otherwise defined, the capitalized terms used herein shall

26  have the meaning defined in the Stipulation and Agreement of Settlement dated

27  November 11, 2015 ("Settlement Agreement"), Order Preliminarily Approving

28  Settlement, Directing Notice to Securities Holders, and Setting Hearing for Final

1

Case No. CV13-08440-DMG(SHx) / DECLARATION OF BRIAN MANIGAULT IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO
DISTRIBUTE NET SETTLEMENT FUND

Approval of Settlement (the "Preliminary Approval Order"), and Notice of Proposed Class Action Settlement, Application of Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice") . The term Recognized Loss shall have the same meaning as specified in the Plan of Allocation, previously approved by the Court.

4.     As set forth in the Preliminary Approval Order, Angeion was retained as the Claims Administrator to supervise and administer the notice procedure as well as the processing of Claims.

5.     I make this declaration in support of Lead Plaintiff's application for an Order:

(a)     approving Angeion's administrative determinations accepting and rejecting claims as herein set forth;

(b)     authorizing distribution of the Net Settlement Fund to the accepted claimants as listed on Exhibit C; and

(c)     authorizing destruction of paper copies of Proof of Claim forms and claim records one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of Proof of Claim forms and claim records three years after distribution of the Net Settlement Fund.

6.     Throughout the claims process, Angeion has received Settlement Class Member inquiries by telephone, electronic mail, and postal mail. Angeion maintains a case specific toll-free telephone number, 1-855-569-5889, established on March 30, 2016, with an interactive voice response system ("IVR"). As of December 7, 2016, 138 calls have been made to the IVR. The automated attendant answered the calls and presented callers with a series of choices to respond to basic questions. If callers needed further assistance, the IVR provided them with a case specific email address, IxiaSecuritiesSettlement@AngeionGroup.com, where they could direct questions or ask for assistance in completing their Proof of Claim form. Through December 7, 2016, Angeion received at least 491 emails at

2

IxiaSecuritiesSettlement@AngeionGroup.com.     All emails that required a response were responded to within one to five business days.   The IVR also provided callers with Angeion's mailing address and Lead Plaintiffs' counsel's mailing address and phone number, if callers had additional questions.

7.     On March 30, 2016, Angeion established a website dedicated to the Settlement, www. IxiaSecuritiesSettlement.com, which includes the following documents:

• Notice of Proposed Class Action Settlement, Application of Attorneys' Fees and Expenses, and Settlement Fairness Hearing

• Proof of Claim and Release Form

• Stipulation and Agreement of Settlement

• Third Amended Class Action Complaint

• Order Preliminarily Approving Settlement, Directing Notice to Securities Holders, and Setting Hearing for Final Approval of Settlement

• Plan of Allocation

• Publication Notice

• Lead Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement and Plan of Allocation

• Notice of Motion and Motion for the Award of Attorney's Fees and Reimbursement of Expenses and Memorandum of Points and Authorities in Support

• Declaration of Robert E. Jones and Ginger Sigler In Support of Motion for Final Approval

• Declaration of Brian Manigault Re: Notice to The Settlement Class and Report on Receipt of Exclusion Request and Objection

• Declaration of Sanjay Pansari

3

1          •      Declaration of James J. Sabella In Support of (A) Motion for

2 Final Approval of Class Action Settlement and Plan of Allocation And (B)

3 Motion for The Award of Attorneys' Fees and Reimbursement of Expenses

4          •      Declaration of Jeff S. Westerman

5          •      Final Order and Judgment

6          •      A list of Important Dates

7          •      Links specifically for institutional filers and brokers to request

8 notice for client and submit electronic claims

9 Through December 7, 2016, the website was visited at least 419 times.

10 **I.  PROCEDURES FOLLOWED IN PROCESSING CLAIMS**

11       8.      Angeion was retained to process Proof of Claim and Release forms

12 ("Claim Forms" or "Claims"), calculate Recognized Losses as set forth in the Plan

13 of Allocation (approved by this Court), and distribute the Net Settlement Fund to

14 Authorized Claimants upon Court approval.

15       9.      Pursuant to the Settlement Agreement, Settlement Class Members

16 were required to submit a Claim Form to the Claims Administrator postmarked no

17 later than June 23, 2016, in order to be considered for eligibility and potentially

18 share in the proceeds of the Net Settlement Fund.

19       10.      Through December 7, 2016, Angeion received and processed 7,160

20 Claims from potential members of the Class.

21       11.      Of the 7,160 claims processed, Angeion received and processed 703

22 "hard-copy" "paper" claim forms, and received 103 files of data that were filed on

23 CDs, disks, and spreadsheets via United States Postal Service, courier, email or

24 secured file transfer protocols ("SFTP") from certain banks, nominees or other

25 representatives who filed on behalf of their Settlement Class Member customers.

26 The electronically filed claims ("EFCs") were accompanied by Proofs of Claim,

27 signature guaranties and other documentation.  In the aggregate, 6,457 claims were

28

created and processed from the electronically filed data, as discussed more fully below.[1]

12.     Angeion used the following procedure to process all paper claims submitted to Ixia Securities Litigation Settlement, c/o Settlement Administrator, 1801 Market Street, Suite 660, Philadelphia, PA 19103:

(a)     envelopes received from the Post Office were opened and sorted into correspondence, such as requests for Claim Forms, and actual Proof of Claim forms;

(b)     the correspondence received was reviewed and responded to accordingly;

(c)     the Claim Forms were opened and all documentation submitted with a Claim Form was grouped with that Claim Form, and each Claim Form was assigned a unique claim number.  Each Claim Form was imaged and the original documents were stored in an on-site designated secure area;

(d)     the information from each Claim Form, including the name, address, account number, Employer I.D. or Social Security Number, and the holdings, purchase and sale transactions listed on the claim were entered into data files housed on Angeion's secure network; the documentation provided in support of each claim by the claimant was reviewed to ascertain whether the claimant had in fact purchased or acquired Ixia common stock during the time period from February 4, 2011 through April 3, 2013, inclusive (the "Class Period"); and

(e)     claims were then reviewed to confirm they had not been submitted by or on behalf of excluded persons, i.e., Defendants in the Action; members of the immediate families of Defendants Victor Alston,

---

[1] EFCs contain transactional information needed to process those claimants' Claims and calculate Recognized Loss.  Each EFC data file was accompanied by at least one hard-copy Proof of Claim signed by the filing entity.

1   Altul Bhatnagar, Thomas B. Miller, Errol Ginsberg; any subsidiaries of

2   Defendants; any affiliate, as defined by the federal securities laws, of

3   Defendants, including the 401(k) plans of Ixia; any person or entity who is

4   a partner, executive officer, director or controlling person of any Defendant;

5   any entity in which any Defendant has a controlling interest; Defendants'

6   directors' and officers' liability insurance carriers, and any affiliates or

7   subsidiaries thereof; and the legal representatives, heirs, successors and

8   assigns of any such excluded party.

## II.   THE CLAIMS APPROVAL PROCESS

13.   In connection with the claims approval process, Angeion determined that certain claims were missing pertinent information and/or documentation, in whole or part, necessary to calculate Recognized Loss.  Through December 7, 2016, Angeion sent 184 Deficient Claim or Denied Claim Notices ("Ineligible Notice") to certain claimants who filed paper claims and whose claims were either:

(a)   intrinsically ineligible because they did not purchase Ixia securities during the Class Period or

(b)   considered duplicative of another filed claim for the same claimant; or

(c)   were missing pertinent documentation or information necessary to calculate the claim's Recognized Loss.

14.   A sample Ineligible Notice is attached hereto as Exhibit A.

15.   In addition, electronic filers were notified of any deficient conditions or rejection of their claim by means of a Transaction Report, as discussed more fully in ¶16, below.

16.   Angeion contacted the banks and other nominees who filed claim/transactional data electronically.  Using the following process, Angeion provided to each broker/nominee who submitted claims electronically, a Transaction Report which listed the data contained in their submission.  (A sample

Transaction Report is attached hereto as Exhibit B). The Transaction Report annotated which portions of the information were incorrect or incomplete. The Transaction Reports:

(a)  were sent to the person at the institution who submitted the data to Angeion, or the "senior level" person who signed the Claim Form;

(b)  contained transactions that were included in the original data files submitted by the claimant, so that the claimant could review transactions they submitted and Angeion subsequently captured;

(c)  identified individual transactions and entire claims that were found to be deficient or ineligible so that the claimant had the opportunity to correct the deficient condition or contest the determination of ineligibility;

(d)  stated that any deficient claims that remain uncured, as well as any claims on the report that were identified as ineligible on the Transaction Report were rejected;

(e)  provided Angeion's e-mail address so that the claimant could contact Angeion if they had any questions or required assistance.

17.  Pursuant to the Settlement Agreement, the Ineligible Notices and the Transaction Reports advised claimants that unless the indicated deficiency was corrected within twenty (20) days, the claim was rejected if the claimant did not supply the required documentation or information for any transactions within the twenty (20) day time period. Further pursuant to the Settlement Agreement, the Ineligible Notices and the Transaction Reports advised claimants that if their claim is rejected and they desired to contest such rejection, the claimant must, within twenty (20) days, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. There are no outstanding objections from claimants as a result of the Ineligible

Notices and Transaction Reports, and Angeion has received no requests for Court review of a rejected claim.

18.    Pursuant to sending Ineligible Notices to certain claimants and sending Transaction Reports to electronic claim filers, Angeion received and processed responses to documentation and information requests, as well as other correspondence relating to Claims.  Such correspondence included: responses to Ineligible Notices that cured deficient claims in whole or in part; responses to Ineligible Notices that provided additional information or documentation that affected a claim's eligibility status; responses to Transaction Reports that cured deficient conditions and affected a claim's eligibility status; and general correspondence to provide an address update or other information pertinent to a claim.

19.    An integral part of the claims administration process is the quality assurance review.  Therefore, after all of the claims were processed, Ineligible Notices and Transaction Reports were sent, and claimants' responses to the Ineligible Notices and Transaction Reports were reviewed and processed, Angeion performed quality assurance reviews. The review procedures ensure the correctness and completeness of all of the claims processed prior to preparing this Declaration and all of Angeion's final documents in support of distribution of the Net Settlement Fund.   Under those review procedures, Angeion:

(a)    Verified that all Claim Forms had authorized signatures;

(b)    Verified that true duplicate claims were identified, verified, and rejected;

(c)    Performed a final quality assurance audit of claims and all supporting documentation to ensure completeness of claims;

(d)    Determined that all claimants whose claims were rejected were notified of the claim's status;

(e)    Performed an audit of deficient claims;

8

(f)    Audited claims that were invalid;

(g)    Audited claims with a Recognized Loss amount equal to zero;

(h)    Performed other auditing based on claims completion requirements and the approved calculation specifications included in the Court-approved Plan of Allocation; and

(i)    Tested the accuracy of the Recognized Loss amount calculation.

## III.   CLAIMS RECOMMENDED FOR APPROVAL AND/OR REJECTION

20.    As noted above, Angeion has received a total of 7,160 claims.

**Timely Filed and Valid Claims**

21.    A total of 6,566 claims were received with a postmark on or before the Court- approved claims filing deadline of June 23, 2016.   After deficiencies were processed and/or cured 1,598 are valid.  The total Recognized Loss amount for these timely filed and valid claims is $24,061,889.02.

**Untimely Filed, but Otherwise Valid Claims**

22.    To date, 594 claims were received with a postmark after the Court-approved claims filing deadline of June 23, 2016.   After deficiencies were processed and/or cured 122 of these claims are otherwise valid. The total Recognized Loss amount for these untimely filed, but otherwise valid claims is $754,269.91.

23.    No claim was rejected solely because it was postmarked and received after the Court-approved claims filing deadline of June 23, 2016.  It is Angeion's opinion that no delay has resulted from the provisional acceptance of these claims, which were processed while the other timely claims were also being processed. Angeion submits that when the equities are balanced, it would be unfair to prevent otherwise valid claims from participating in the Settlement distribution solely because they were submitted after the Court-approved claims filing deadline, but

9

1  while the timely claims were still being processed.  Furthermore, many of the
2  claimants who submitted late claims explained that their brokers did not forward
3  the notice and claim form to them until after the deadline for submission of claims
4  had passed, and hence the late submission was not the fault of the claimant.
5  Accordingly, Angeion respectfully requests that this Court approve Angeion's
6  administrative determination not to reject these untimely filed, but otherwise valid
7  claims. However, there must be a final cut-off date after which no more claims
8  may be accepted so that there may be a proportional distribution of the Net
9  Settlement Fund. Acceptance of any claim received after preparation of this
10  application would necessarily require a delay in the distribution.  Accordingly, it
11  is also respectfully requested that this Court order that any late claims not identified
12  on Exhibit C shall not be entitled to share in any distributions of the net Settlement
13  Fund.

14       24.     Pursuant to the Plan of Allocation, the total Recognized Loss amount
15  for all valid, non-deficient claims is $24,816,158.93.

16  **Rejected Claims**

17       25.     A total of 423 claims were rejected in whole or in part for the
18  following reasons:

19           (a)     26 claims did not involve purchases during the Class Period;
20           (b)     359 claims were duplicate; and
21           (c)     38 claims had uncured deficiencies.

22       26.     Angeion notified all the rejected claimants, described above, of the
23  disposition of their claims with an Ineligible Notice for paper claims or a
24  Transaction Report for claims filed electronically.  As noted above in ¶17, Angeion
25  has received no requests for Court review of a rejected claim.

26       27.     Additionally, 5,017 claims had a Recognized Loss amount of zero
27  ("No Loss") as calculated under the Court-approved plan of allocation.  Angeion

28

10

will send a No Loss letter to these 5,017 claimants.  A sample No Loss Letter is attached hereto as Exhibit D.

**List of All Claims**

28.     Attached as Exhibit C is a computer printout listing all claims filed.

(a)     Part One lists all valid and timely filed claims and shows each claimant's Recognized Loss amount.

(b)     Part Two lists all claims that were valid, but submitted after the Court-approved claims filing deadline of June 23, 2016, and shows each claimant's Recognized Loss amount.

(c)     Part Three lists the rejected claims and the rejection reasons.

(d)     Part Four lists No Loss claims.

**IV.     *PRO RATA* DISTRIBUTION OF NET SETTLEMENT FUND AMONG AUTHORIZED CLAIMANTS**

29.     All procedures performed by Angeion with respect to the distribution of the Net Settlement Fund, including procedures to determine the validity of claims, are subject to the supervision and direction of Lead Counsel and the Court. To carry out such orders as the Court may issue with respect to the allocation and distribution of the Net Settlement Fund to Authorized Claimants, Angeion will first coordinate with Lead Counsel to determine the remaining balance in the Net Settlement Fund.  Second, assuming the Court approves the Proposed Distribution of the Net Settlement Fund, Angeion will calculate the pro rata distribution amounts for each Authorized Claimant based upon the Plan of Allocation, taking into consideration the de minimis distribution threshold of $10.

30.     Angeion will prepare checks and check registers of such distribution and mail the checks by prepaid first class mail.  Payments distributed by check to Authorized Claimants shall bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED 180 DAYS AFTER ISSUE

DATE." Angeion will issue replacement checks upon request by payee and will answer inquiries about claim calculations and checks.

## V.   RECORDS RETENTION AND DESTRUCTION

31.    Unless otherwise ordered by the Court, one (1) year after distribution of the Net Settlement Fund, Angeion will destroy the paper copies of the Proofs of Claim and all supporting documentation.  Unless otherwise ordered by the Court, Angeion will destroy the electronic copies of the Proofs of Claim and all supporting documentation three (3) years after distribution of the Net Settlement Fund.

## VI.   REMAINING FUNDS

37.    For any funds remaining one year from the initial distribution of the Net Settlement Fund, after payment of claims administration costs as requested herein and after Angeion has made reasonable and diligent efforts to contact claimants who have not cashed their payments, Angeion will consult with Lead Counsel to determine if a redistribution of the remaining Net Settlement Fund to Class Members who cashed their initial distribution check is cost effective, after taking into consideration payment of any additional costs and expenses that would be associated with a redistribution, or if  the balance will be distributed cy pres.

## VII.  CONCLUSION

38.    For the foregoing reasons, it is respectfully requested that this Court enter an Order:

(a)    approving Angeion's administrative determinations accepting and rejecting claims as herein set forth;

(b)    authorizing distribution of the Net Settlement Fund to the accepted claimants as listed on Exhibit C; and

(c)    authorizing destruction of paper copies of Proof of Claim forms and claim records one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of Proof of Claim forms and claim records three years after distribution of the Net Settlement Fund.

12

1    39.    I declare under penalty of perjury under the laws of the United States

2  that the foregoing is true and correct.

3  Dated:        December 9, 2016

4

5  _____

6                                Brian Manigault

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV13-08440-DMG(SHx) / DECLARATION OF BRIAN MANIGAULT IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO DISTRIBUTE NET SETTLEMENT FUND